Argued and submitted December 10, 2002, reversed and remanded in part; otherwise affirmed January 29, 2003

PORT OF MORROW,
an Oregon municipal corporation,
*Respondent,*

*v.*

Jedediah W. AYLETT,
individually and as Personal Representative of
the Estate of Juanita M. Aylett;
Earl L. Aylett; and Deborrah J. Aylett,
*Appellants.*

Jedediah W. AYLETT,
individually and as Personal Representative of
the Estate of Juanita M. Aylett;
Earl L. Aylett and Deborrah J. Aylett,
*Counterclaim Plaintiffs,*

*v.*

PORT OF MORROW,
an Oregon municipal corporation,
*Counterclaim Defendant.*

99 CV 032; A113430

62 P3d 427

Michael J. Morris argued the cause and filed the briefs for appellant Jedediah W. Aylett.

George L. Anderson argued the cause and filed the briefs for appellants Earl L. Aylett and Deborrah J. Aylett.

Michael T. Garone argued the cause for respondent. With him on the brief were Mario J. Madden and Schwabe, Williamson & Wyatt, P.C.

Before Haselton, Presiding Judge, and Linder and Wollheim, Judges.

HASELTON, P. J.

## HASELTON, P. J.

Defendants appeal the trial court's judgment granting plaintiff Port of Morrow declaratory and injunctive relief concerning the operation and use of an irrigation system on land in which defendants have interests, and dismissing defendants' counterclaims with prejudice. We affirm without discussion as to defendant Jedediah Aylett's assignments of error concerning the trial court's conclusions about defendants' rights to use the irrigation system on defendants' leased lands and the trial court's calculation of damages. However, all defendants also assign error to the trial court's inclusion in the judgment of terms relating to the use of the irrigation system on certain land that defendants own, arguing that the use of the irrigation system on that land was not at issue in the present case. As explained below, we agree with defendants that the trial court erred in granting relief to plaintiff that went beyond the scope of the pleadings and the issues tried. Thus, we reverse in part and remand to the trial court for entry of an amended judgment.

Plaintiff owns an irrigation system that is capable of delivering water to certain property it owns and also to property owned (Section 21) and leased (Sections 27 and 28) by defendants Ayletts. Plaintiff filed this action for declaratory and injunctive relief, alleging that, although "the Ayletts own the right to use the water delivery system belonging to the Port for the delivery of water to Section 21," they have "no right to use the water delivery system owned by the Port for delivery of water to Sections 27 and 28." Plaintiff prayed for the following relief:

"1. A judgment declaring that the defendants have no right to use the pipeline and related property belonging to the Port of Morrow for delivery of water for irrigation purposes to Sections 27 and 28 * * *;

"2. An injunction preventing any use of the pipeline and related property for delivery of water for irrigation purposes to Sections 27 and 28;

"3. For a judgment against defendants in an amount to be determined at trial for use of the pipeline and related property belonging to plaintiff for the delivery of water for

irrigation purposes to Sections 27 and 28 since September 1, 1997; and

"4. For such other and further relief as the court deems appropriate."

Defendants also raised counterclaims concerning their use of the irrigation system on Sections 27 and 28, and further raised issues concerning plaintiff's use of the irrigation system. Defendants' prayer for relief, like plaintiff's, made no mention of Section 21.

A detailed description of the litigation is unnecessary here. Suffice it to say that the parties presented evidence about the creation of the irrigation system by their predecessors in interest, the use of the system on various lands by various parties and predecessors, and the legal entitlements to the use of the system on the various lands. The only specific facts concerning the irrigation system that are relevant to the issue before us are that the water that defendants used was controlled by two pumps and that the water that flowed to Sections 27 and 28 flowed first through Section 21. Historically—and apparently as a result of litigation in 1993 between defendants and plaintiff's predecessor in interest—defendants have operated the two pumps controlling the water flow to Section 21. During the course of this litigation, there was a colloquy between the parties' attorneys and the court concerning the scope of a stipulation, during which one of the defense attorneys stated that, if plaintiff attempted to take over operation of the two pumps that controlled the water flow to Section 21 and began charging 20 percent more for the water as labor costs, defendants would seek a restraining order. Plaintiff's attorney responded that the stipulation that the parties were discussing did not, in fact, cover the topic of who would control the pumps or the price of water flowing onto Section 21. Plaintiff's counsel assured the court that the issue was not before it and continued, "Now, if a month or a year or two years from now, they disagree with what we're charging them and have some basis on which [to] claim that it's wrong and we can't do that, let them bring another lawsuit."

The trial court ultimately concluded that the agreements pursuant to which defendants claimed to have a right

to use water from the irrigation system on Sections 27 and 28 did not, in fact, give them such a right. The court also rejected defendants' counterclaims. The trial court calculated damages based on defendants' use of water from the irrigation system on Sections 27 and 28 from 1997 through 2000. The court enjoined defendants from using the irrigation system to deliver water to Sections 27 and 28 without the express written consent of plaintiff. Finally, the court included in the judgment the following terms:

"2.   Plaintiff has the exclusive right to operate the pipeline and water delivery system, including but not limited to the pumps, exclusively, so long as plaintiff does not interfere with defendants' right to the uninterrupted use of the system on Section 21;

"3.   Plaintiff has the right to charge defendants for the actual costs of the future use of the pipeline and water delivery system for delivery of water to Section 21, which shall be determined based upon the proportionate cost of operation of the pipeline by defendants including the pumps. Plaintiff may determine the amount of water used by defendants for Section 21 with the use of a flow meter that is properly calibrated and tested on a yearly basis[.]"

On appeal, defendants make two arguments concerning the inclusion of those two paragraphs in the judgment. First, they argue that the relief granted in those paragraphs goes beyond the relief sought in the pleadings and that inclusion of those terms in the judgment was erroneous, particularly in light of plaintiff's assurances to the court that those issues were not before the court and would be litigated at some later date if necessary. Second, defendants argue that the trial court erred as a matter of law in including those terms in the judgment because the previous 1993 litigation between defendants and plaintiff's predecessor in interest established that the "Ayletts are entitled to use and operate the water delivery system" to deliver water to their property. Defendants assert that claim preclusion or issue preclusion bars relitigation of the question of their right to operate the irrigation system, and particularly the two pumps delivering water to Section 21. We do not reach defendants' second argument because, as explained below, we agree with their first.

■ ■   A court in equity has broad discretion in crafting relief. *See, e.g., Ballinger v. Klamath Pacific Corp.*, 135 Or App 438, 450 n 10, 898 P2d 232, *rev den*, 322 Or 360 (1995) ("Equitable relief need not take the precise form, amount or duration that a plaintiff might choose to seek; the trial court has discretion to fashion a remedy that is appropriate under the unique circumstances of each case."). Moreover, parties in equity are not necessarily limited to the relief that they seek in their complaint. *See Does 1-7 v. State of Oregon*, 164 Or App 543, 548, 993 P2d 822 (1999), *rev den*, 330 Or 138 (2000); ORCP 67 C. There are, however, some limitations on the scope of relief a court may order.

For example, in *Ellison v. Watson*, 53 Or App 923, 930, 633 P2d 840, *rev den*, 292 Or 109 (1981), we held that, although a court has broad power to "shape a decree under a prayer for general equitable relief," the court erred in granting reformation of a contract where "the relief granted is not only outside the scope of the pleadings, but involves a matter *specifically excluded* from the case by the plaintiff with the knowledge and consent of the defendants and the court." (Emphasis in original.) Similarly, in *Shumate v. Robinson*, 52 Or App 199, 627 P2d 1295 (1981), a trial court concluded that a party's claim to ownership of certain real property failed but *sua sponte* awarded that party an easement over the disputed property. We concluded that the trial court erred in doing so:

> "The broad power of a court of equity should not be invoked to shape a decree which was not reasonably contemplated by the parties and which, as here, represents a substantial departure from the pleadings and the legal theories relied upon by the parties."

*Id.* at 205. *See also Hurlbutt v. Hurlbutt*, 36 Or App 721, 725, 585 P2d 724 (1978), *rev den*, 285 Or 73 (1979) (trial court erred in imposing constructive trust where plaintiff sought only resulting trust: A "judgment must be responsive to the issues framed by the pleadings and a trial court has no authority to render a decision on issues not presented for determination.").

*Shumate* and *Hurlbutt* concerned relief granted based on legal theories not advanced by the parties and, thus,

are not precisely apposite to this case. *Ellison*, however, is notably similar in that the relief erroneously granted by the court concerned subject matter that not only was not the grounds for the litigation but that was specifically disavowed by the party seeking relief as being properly before the court.

Plaintiff argues that those cases are distinguishable from the present case because the relief at issue here is "logically connected" to the relief requested, and that "the court merely crafted a pragmatic method of furthering the relief specifically requested in the complaint." We disagree. Plaintiff did not assert in its pleading, or attempt to prove at trial, that it was necessary for plaintiff to control the pumps that brought water to Section 21 in order to prevent defendants from irrigating Sections 27 or 28. Moreover, plaintiff posits no logical connection, and we can see none, between defendants' rights (or lack thereof) to irrigate Sections 27 and 28 and the amount that plaintiff can charge defendants to irrigate Section 21. Further, both parties indicated in the trial court that the regulation and cost of water flowing to Section 21 might be the subject of *future* litigation, and plaintiff specifically indicated to the trial court that it was not a subject of *this* litigation. Given those circumstances, we agree with defendants that the relief ordered by the court in paragraphs 2 and 3, quoted above, "was not reasonably contemplated by the parties and * * * represents a substantial departure from the pleadings and the legal theories relied upon by the parties." *Shumate*, 52 Or App at 205.

Reversed and remanded for entry of an amended judgment deleting paragraphs 2 and 3; otherwise affirmed.