Argued and submitted November 7, 2005, affirmed on appeal; on cross-appeal, reversed and remanded for entry of judgment awarding defendant Diane Gwyn attorney fees in the amount of $52,357.25 together with costs in the amount of $729.50 May 17, 2006

## C. A. M. CONCEPTS, INC.,
a West Virginia corporation,
*Appellant - Cross-Respondent,*

*v.*

## Diane E. GWYN,
*Respondent - Cross-Appellant,*

*and*

## Woodrow F. GWYN,
*Respondent,*

*and*

## UNITED STATES,
a sovereign nation;
Richard L. Odell;
State Farm Insurance Company,
an Illinois corporation;
Valley Credit Service, Inc.,
an Oregon corporation;
Jim Smith's Heating & Sheet Metal, Inc.,
an Oregon corporation,
*Defendants.*

00C-16002; A120488

136 P3d 60

Richard L. Grant argued the cause and filed the briefs for appellant - cross-respondent.

Michael J. Martinis argued the cause for respondent - cross-appellant Diane E. Gwyn. With him on the briefs was Webb, Martinis & Hill.

No appearance for respondent Woodrow F. Gwyn.

Before Landau, Presiding Judge, and Schuman and Ortega, Judges.

LANDAU, P. J.

## LANDAU, P. J.

This dispute arises out of a fairly complicated set of agreements that were intended to aid Woodrow Gwyn, a home developer who had fallen into dire financial straits. In a nutshell, an asset workout company agreed to manage certain properties that the developer and his former wife, Diane, owned and to pay off his debts. When Woodrow and Diane became unsatisfied with the company's performance, they terminated the agreements. The company assigned its interest in the agreements to plaintiff, C.A.M. Concepts, Inc., which alleged claims for declaratory judgment, breach of contract, breach of warranty, and assumpsit. Woodrow defaulted, but Diane defended her interest in the properties. The trial court rejected all of C.A.M. Concepts' claims, but it *sua sponte* awarded damages against Diane for "unjust enrichment." The court awarded Diane her attorney fees, although it reduced the amount that she had requested by 15 percent and then deducted the damages for unjust enrichment.

C.A.M. Concepts appeals, assigning error to the trial court's rejection of each of its claims. We reject each of C.A.M. Concepts' arguments without discussion. Diane cross-appeals, assigning error to the trial court's *sua sponte* award of damages on an unjust enrichment claim that C.A.M. Concepts had not alleged. She also assigns error to the trial court's decision to reduce the attorney fee award by 15 percent. For the reasons that follow, we agree with Diane on the cross-appeal. We therefore affirm on the appeal, but we reverse on the cross-appeal and remand for entry of judgment awarding her attorney fees in the amount of $52,357.25, together with costs in the amount of $729.50.

The facts pertinent to the issues on appeal are largely undisputed. Diane and Woodrow Gwyn had been married, but they divorced in 1984. In the dissolution decree, Diane obtained a judgment lien in the amount of $200,000 on the parties' marital residence, a nine-acre parcel known as "the Wapato property."

In 1994, Woodrow ran into financial difficulty. He entered into an "Administration Agreement" with the Plains

Group, Ltd., for the management of a "capital and asset recovery plan." The plan required the "development, repair and sale" of all properties that Woodrow owned. For its efforts, Plains Group would receive 50 percent of the net value of all proceeds at the conclusion of three years or, at Plains Group's option, at the conclusion of eight years.

Woodrow gave Plains Group $30,000 in bearer bonds to help finance the recovery plan. He also gave Plains Group an irrevocable power of attorney to deal with all of his assets. The power of attorney stated that it "is granted with an interest in the property and the proceeds of the property, and therefore shall be irrevocable and shall remain in full force and effect until renounced by" Plains Group.

To assist Woodrow in the recovery plan, Diane entered into a "Judgment Settlement Agreement," under the terms of which she assigned her judgment lien against the Wapato property to Plains Group. In return, Plains Group agreed to make payments to her and her mother out of the proceeds of the recovery. The Judgment Settlement Agreement also gave Diane the right to approve any sale of the Wapato property.

The recovery plan included a remodel and upgrade of the Wapato property. The property would then be sold and the proceeds applied to save Woodrow's other properties. Plains Group or its agents ultimately spent $44,408.84 to remodel and improve the Wapato property.

One year into the recovery plan, Woodrow and Diane became concerned about Plains Group's performance. In June 1995, Woodrow refused to allow Plains Group to complete the renovations of the Wapato property. That same month, he unilaterally terminated the Administration Agreement and revoked his power of attorney. Diane rescinded her assignment to Plains Group of the judgment lien on the Wapato property and the Judgment Settlement Agreement. Woodrow then gave Diane a quitclaim deed to the Wapato property, in satisfaction of her judgment lien.

Plaintiff C.A.M. Concepts acquired Plains Group's rights and interests. Based on the events described above, it filed the complaint in this proceeding, alleging claims of

declaratory relief for breach of contract, breach of warranty, and assumpsit. It sought the benefits of Plains Group's bargain with the Gwyns, that is, enforcement of the Administration Agreement, the power of attorney, the assignment of the judgment lien, and the Judgment Settlement Agreement; and it also sought a declaration that the Wapato property be sold, that plaintiff receive its interest under the judgment lien, and that the remaining proceeds be divided equally between plaintiff and Diane. In the alternative, C.A.M. Concepts sought a sale of the Wapato property, reimbursement from the sale proceeds of the amount that Plains Group had invested in renovations, and an equal division of the remaining proceeds.

Woodrow defaulted. The trial court found, however, that, in repudiating the Administration Agreement, Woodrow had breached his agreement with Plains Group, that Plains Group was excused from further performance of its agreement with Woodrow, and that Plains Group—and, as a result, its assignee C.A.M. Concepts—had been damaged as a result of Woodrow's breach in the amount of $44,408.84, that is, the amount that Plains Group or its agents had expended on the renovations of the Wapato property, less an offset of $30,000 for the bearer bonds that Woodrow had given to Plains Group.

As for Diane, the trial court rejected each of C.A.M. Concepts' claims. It found that C.A.M. Concepts and its predecessor had not performed their duties to Diane under the Judgment Settlement Agreement and that Diane had not breached any contract or warranties to plaintiff. The court further found that C.A.M. Concepts had not established the elements of its claim of assumpsit. The trial court nonetheless found that Diane had benefitted from the improvements that Plains Group had made to the Wapato property and that C.A.M. Concepts was therefore entitled to an award of $14,408.84 for the net amount expended on "the Court's equity claim of unjust enrichment," plus costs on that claim.

Diane submitted a petition for an award of $52,357.25 in attorney fees. The trial court granted the petition, but subject to two offsets. First, the court deducted 15 percent—$7,853.59—to reflect the amount of time Diane's

"lawyers spent successfully defending against [C.A.M. Concepts'] Third Claim for Relief, the assumpsit claim." Second, it deducted the $14,408.84 award for unjust enrichment. With costs, the net award to Diane totaled $30,824.32.

Diane assigns error to the trial court's decision to award damages for unjust enrichment and for deducting 15 percent for work on a claim on which she actually prevailed. We agree with Diane in both respects.

As pleaded and argued, C.A.M. Concepts' assumpsit claim had the same underlying factual bases as the breach of contract and warranty claims—that it and Plains Group had fully performed their obligations under the Administration Agreement until the Gwyns repudiated that agreement, that Diane had received the benefits of Plains Group's performance of its obligations, and that C.A.M. Concepts should receive the benefits of the bargain. C.A.M. Concepts sought a sale of the Wapato property, reimbursement for its and Plains Group's improvement expenditures, and a division with Diane of the remaining proceeds.

As we understand the pleadings and the parties' arguments, C.A.M. Concepts' assumpsit claim appears to be the common indebitatus count of "money had and received." *See Davis v. Tyee Industries*, 295 Or 467, 472-73, 668 P2d 1186 (1983) ([t]he "common counts" of general assumpsit include (1) the indebitatus counts, (2) the value counts, and (3) account stated; major indebitatus counts included money paid to the defendant's use, money had and received, and goods sold and delivered; major value counts included *quantum meruit* and *quantum valebant*). A claim of money had and received is appropriate when a contract has been fully performed by the plaintiff, and nothing remains to be done but the payment of money. *Ram Development Corp. v. Siuslaw Enterprises*, 283 Or 13, 18, 580 P2d 552 (1978).

The claim is an action at law. *See Belmont Int'l Inc. v. American Int'l Shoe Co.*, 313 Or 112, 831 P2d 15 (1992). Recovery on a theory of money had and received is based on a promise implied by law and on the equitable principle that one who has been unjustly enriched at the expense of another is required to make restitution. As the court explained in *Powell v. Sheets*, 196 Or 682, 700, 251 P2d 108 (1952),

" 'The term "money had and received" is the technical designation of a form of declaration in assumpsit, wherein plaintiff declares that defendant had and received certain money, etc. Although an action at law, an action for money had and received is equitable in its nature and is governed by equitable principles. It may, in general, be maintained whenever one has money in his hands belonging to another, which, in equity and good conscience, he ought to pay over to that other. *Recovery in such case is based on a promise implied by law or quasi contract and on the equitable principle that one who has been unjustly enriched at the expense of another is required to make restitution.*' "

(Quoting *Money Received,* 58 CJS 906 § 1; emphasis in *Powell.*) In this case, the trial court found that C.A.M. Concepts and Plains Group had failed to perform their obligations to Diane and rejected the assumpsit claim. As we have noted, we affirm that ruling.

■■ The question then is whether the court nevertheless could award damages on a different theory, that is, the equitable theory of unjust enrichment. We conclude that it could not. In neither law nor equity does a court's authority extend to the fashioning of remedies based on legal theories not advanced by the parties. *See, e.g., Rieman v. Swope,* 190 Or App 516, 522, 79 P3d 399 (2003) (trial court errs in granting relief on an unpleaded theory); *Port of Morrow v. Aylett,* 186 Or App 70, 76, 62 P3d 427 (2003) (same); *Central Oregon Fabricators v. Hudspeth,* 159 Or App 391, 977 P2d 416, *rev den,* 329 Or 10 (1999) (same); *Sunset Industries, Inc. v. Bartel,* 84 Or App 537, 540, 734 P2d 897 (1987) (where *quantum meruit* claim was not pleaded nor proved, judgment could not be awarded on that basis).

In this case, it is undisputed that C.A.M. Concepts did not plead a claim of unjust enrichment. Moreover, from our review of the record, it is clear that an unjust enrichment claim was not implicitly tried by the parties. C.A.M. Concepts has advanced no other legal theory that would support an award of damages for unjust enrichment. We therefore reverse the trial court's award of damages to plaintiff for unjust enrichment, as well as its award of costs on that claim.

■     That leaves Diane's argument that the court erred in reducing her attorney fee award by 15 percent for time attributable to the assumpsit claim. We agree with Diane that, as pleaded and tried, the assumpsit claim—on which she prevailed—involved the same factual and legal issues as the claims of breach of contract and breach of warranty. We can identify no basis for reducing the award for time spent on the assumpsit claim. *See Morgan v. Goodsell*, 198 Or App 385, 108 P3d 612 (2005); *Greb v. Murray*, 102 Or App 573, 576, 795 P2d 1087 (1990) (when a party prevails in an action that encompasses both a claim for which attorney fees are authorized and a claim for which they are not, the trial court must apportion attorney fees, except when there are issues common to both claims).

Affirmed on appeal; on cross-appeal, reversed and remanded for entry of judgment awarding defendant Diane Gwyn attorney fees in the amount of $52,357.25 together with costs in the amount of $729.50.