SUNRICH FOOD GROUP, INC.,
Plaintiff—Appellee,

v.

PACIFIC FOOD OF OREGON, INC.,
Defendant—Appellant.

Sunrich Food Group, Inc.,
Plaintiff—Appellant,

v.

Pacific Food of Oregon, Inc.,
Defendant—Appellee.

Nos. 05–35152, 05–36171.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 13, 2006.

Filed Oct. 12, 2006.

Eric A. Bartsch, Esq., Sarah Stroebel, Lindquist & Vennum, Minneapolis, MN, Peter E. Heuser, Esq., Kolisch, Hartwell, Dickinson, McCormack & Heuser, Portland, OR, for Plaintiff–Appellee.

James N. Westwood, Esq., Stoel Rives, LLP, Portland, OR, Bryan P. Coluccio, Esq., Cable Langenback Kinerk & Bauer, Seattle, WA, for Defendant–Appellant and Defendant–Appellee.

Eric A. Bartsch, Esq., Lindquist & Vennum, Minneapolis, MN, Peter E. Heuser, Esq., Kolisch, Hartwell, Dickinson, McCormack & Heuser, Portland, OR, for Plaintiff–Appellant.

Before: HAWKINS, SILVERMAN, and GOULD, Circuit Judges.

## MEMORANDUM *

Pacific Foods of Oregon, Inc. ("Pacific") appeals from a judgment following a jury

---

\* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

trial in favor of Sunrich Food Group, Inc. ("Sunrich") on Sunrich's claims of misappropriation of trade secrets and breach of contract. Sunrich cross-appeals the district court's award of attorneys' fees, which was substantially lower than the amount requested by Sunrich. In each appeal, we affirm in part, reverse in part, and remand.

**Appeal No. 05–35152:**

## I. Misappropriation of Trade Secrets

### A. Denial of Pacific's Motion for Summary Judgment

■ Although Pacific argues that the district court erred by denying its motion for summary judgment on Sunrich's misappropriation of trade secrets claim, a denial of summary judgment is not a final order and is not appealable, unless coupled with a grant of summary judgment to the other party. *United States v. Alameda Gateway, Ltd.,* 213 F.3d 1161, 1164 (9th Cir.2000); *Lum v. Honolulu,* 963 F.2d 1167, 1170 (9th Cir.1992).

### B. Pacific's Motion for Judgment as a Matter of Law

■ Pacific concedes that Sunrich's pricing and margin information (i.e., Pacific's price to Sunrich for manufacturing and packing its Soy–Um and Rice–Um products and Sunrich's price to Trader Joe's for these products) "is the sort of 'cost data' that can be a trade secret under O.R.S. § 646.461(4)." There was also sufficient evidence for a rational jury to conclude that Sunrich's predecessor, First Light Foods ("FLF"), took reasonable efforts to protect this information. The jury heard testimony from Mr. Jenkins that the only information FLF initially provided to potential suitors was "top line" financial information, and that FLF did not reveal their confidential pricing information; Jenkins also testified that FLF did not reveal any detailed pricing information to Sunrich until the parties were deep into the merg-

er process and after consulting an attorney. Mr. Routh of Sunrich acknowledged receiving general financial statements, margin information and sales volumes during the merger negotiations. Routh testified that he did not recall receiving margin information on any individual products, but only gross margin information on all of FLF's sales.

Drawing all inferences in favor of upholding the verdict, the jury could have concluded either that FLF did not reveal any individual product pricing information to Sunrich (only overall margin information), or that its disclosure of this information at a late stage of the merger was "reasonable" under the circumstances. *See Buffets, Inc. v. Klinke,* 73 F.3d 965, 969 (9th Cir.1996) (reasonable efforts to maintain secrecy includes limiting access to information on a "need to know basis").

Pacific also argues that Sunrich failed to establish its actual losses resulting from the pricing misappropriation. However, Sunrich introduced testimony and documents proving that Pacific began communicating directly with Trader Joe's new buyer in 2001 to undercut Sunrich's price to Trader Joe's on the existing soy and rice beverages. Sunrich's expert reviewed the company's past sales history, calculated what Sunrich's reasonably certain future sales would have been, and compared them to Sunrich's actual sales to Trader Joe's in 2001 and 2002. Viewing the evidence in the light most favorable to Sunrich, the jury could have concluded that Sunrich lost market share at Trader Joe's because Pacific used confidential price margin information to undercut Sunrich's existing prices.

■ Pacific also contends that Sunrich did not establish that the "half-gallon opportunity" constitutes a "trade secret." We agree. Trader Joe's was already purchasing half-gallons from another soy pro-

ducer, and Trader Joe's interest in a half-gallon size product was "generally known to the public" and not a "trade secret" under the Oregon Trade Secret Act ("OTSA"). *See* O.R.S. § 646.461(4)(a); *IKON Office Solutions, Inc. v. American Office Products, Inc.*, 178 F.Supp.2d 1154, 1169–70 (D.Org.2001) (information readily obtainable from public sources not a trade secret). Trader Joe's also disclosed its dissatisfaction with its current half-gallon vendor in front of Pacific, who was not restricted from competing with FLF under the terms of the Packing Agreement. The district court should have granted Sunrich's motion for judgment as a matter of law on this issue.

## C. Motion in Limine Regarding Expert Testimony

■ The district court did not abuse its discretion by permitting Sunrich's damages expert to amend an earlier report. Sunrich's claims for misappropriation of trade secrets overlapped with several of its other common law claims, including unfair competition. It is thus unsurprising that someone not trained in the law would use a broader description like "unfair dealing" to describe all these similar causes of action. The crux of the expert's report, including the methodology and the ultimate calculation of lost profits, remained unchanged from one report to the next. Pacific does not claim that it was surprised by the expert's testimony or given an inadequate time to prepare for rebuttal. Nor does Pacific explain how it was prejudiced in any way by admission of the testimony (i.e., inability to offer counter-evidence).

The district court did not abuse its discretion in denying Pacific's motion in limine.

## D. Exclusion of Exhibit 704

■ We find it difficult to review Pacific's claim of error regarding the exclusion of Exhibit 704 because the record lacks any offer of proof regarding the foundation for admitting the documents. *See Heyne v. Caruso*, 69 F.3d 1475, 1481 (9th Cir. 1995). The documents were only relevant if disclosed to Sunrich; however, it is not readily apparent from the purported "cover letter" that these pricing documents were the "financial" documents enclosed with the letter. On this record, we cannot say the district court abused its discretion by excluding the documents.[1]

## II. Breach of Contract

### A. Pacific's Motion for Judgment as a Matter of Law

The district court did not err by denying Pacific's motion for judgment as a matter of law with respect to the strawberry, coffee and fat-free breach of contract claims. Pacific argues that the orders it processed for strawberry, coffee or fat-free Soy–Um or Rice–Um were not "requirements" because the orders were addressed to Pacific, while the Packing Agreement describes "requirements" as "Trader Joe's orders to FLF." However, Trader Joe's buyer testified that he sent all of the purchase orders for the product to *both* FLF as the vendor and to Pacific, who produced the product for FLF under the Packing Agreement. Furthermore, the Packing Agreement itself contemplates that Pacific

1. We are also unpersuaded that the district court completely denied Pacific the opportunity to offer the documents at trial; although the court generally excluded most merger documents as irrelevant, it recognized that some of them could be relevant to Pacific's disclosure of trade secrets argument, and in-

dicated that it would give Pacific "leave to reoffer three documents that they believe is the best evidence of this waiver of trade secret material." Pacific does not cite to any portion of the record where it attempted to introduce these documents at trial.

would receive and process Trader Joe's orders for the Product on behalf of FLF, formalizing the existing practice of the parties at the time of the agreement: "Administration of the production, orders, sales and invoicing of the Product will be handled by Pacific."

Pacific also contends that because Exhibit B to the agreement did not list the strawberry, coffee or fat-free varieties, they did not constitute a "Product." Although Exhibit B set forth the pricing agreement at the time the parties executed the Packing Agreement, the definition of "Product" is not limited to the items described in Exhibit B, but covers "*any* soy base or rice base beverages manufactured and packaged for retail sale using the Trademark ... or any other soy base or rice base beverages to be sold, distributed, marketed, or developed by FLF (1) to or for Trader Joe's ...." (emphasis added).

Finally, Pacific argues that there was no breach of the Packing Agreement with respect to the half-gallon product. We agree. While the Packing Agreement was in place, Trader Joe's did not actually place an "order" for a half-gallon Soy–Um or Rice–Um product to FLF *or* Pacific, as that term is used in its customary sense in the Packing Agreement. Although not defined in the Packing Agreement, "order" is used as shorthand for "purchase order," that is, a request for a specific amount of product, and not a general desire to purchase a not yet existent product. ["Administration of the production, orders, sales and invoicing of the Product will be handled by Pacific."; "The payment for each order of Product shall be net fifteen (15) days from the date of Pacific's invoice."]. At best, Trader Joe's expressed an interest in placing an order for such a product from FLF during the meeting with FLF and Pacific in November 1998, and indicated that it would order such a product from FLF in the future if it became available. We therefore reverse the denial of judgment as a matter of law on this issue.

## B. Exclusion of Exhibit 719

Although the district court appears to have excluded Exhibit 719 as irrelevant, we agree that this proffered exhibit was possibly relevant to Pacific's untimeliness defense.[2] However, any error in excluding the document did not taint the jury's verdict. *McEuin v. Crown Equip. Corp.*, 328 F.3d 1028, 1032 (9th Cir.2003). Pacific thoroughly questioned Sunrich's principal, Alan Routh, about the termination of the Packing Agreement. Moreover, the evidence at trial also demonstrated that the parties remained in ongoing negotiations throughout the spring of 2001—long after the January letter—in an attempt to resolve the pricing dispute and continue the relationship under the Packing Agreement. Thus, even if the jury had known that this letter had been sent during the merger discussions, it could have still found that it was reasonable for Sunrich to wait to terminate the Packing Agreement until it was apparent the negotiations were at an impasse.

## C. Jury Instructions

 The district court did not abuse its discretion by rejecting Pacific's proposed jury instructions on the breach of contract claim. Pacific's proposed instructions differed from those given by the court only with respect to Pacific's contention that the products had to be listed on Exhibit B

---

**2.** However, before the jury could hold the statements in the letter against Sunrich, Pacific needed to establish that the counsel's letter represented the company's official position with respect to Pacific's breach, *see* Fed. R.Evid. 801(d)(2)(C), which would have been difficult to do since Sunrich did not at the time own FLF.

before they could constitute "products" under the Packing Agreement.[3] The district court did not err by rejecting Pacific's proposal because the definition of "Product" under the Packing Agreement contains no reference whatsoever to Exhibit B. As discussed above, Exhibit B is only referenced in the Packing Agreement with respect to pricing in Paragraph 5 to illustrate current prices for the existing products; the same paragraph contemplates that the parties will periodically review and adjust these prices. Nothing in Paragraph 5 suggests that "Products" is limited to the items set forth in Exhibit B, as opposed to the extensive and broad definition of "Product" set forth in Paragraph 1. Thus, the district court did not commit a legal error by refusing to instruct the jury as Pacific requested.

### III. Dismissal of Pacific's Lost Volume Seller Claim

■ We decline to address this claim because Pacific utterly failed to comply with Circuit Rule 30–1 by failing to include in the excerpts the order from which it appeals, its sealed response to Sunrich's first motion in limine, and numerous other documents that are cited in support of this argument in its opening brief. *See In re O'Brien*, 312 F.3d 1135, 1136–37 (9th Cir. 2002). Alternatively, we note even if the district court erred by dismissing the claim, any such error was harmless because the jury rejected Pacific's affirmative defense that Sunrich had itself materially breached the Packing Agreement, and instead found that Pacific was the party who breached. *See Wasserburger v.*

*American Scientific Chemical,* 267 Or. 77, 514 P.2d 1097, 1099 (1973).

### IV. Prejudgment Interest

■ The district court did not err in awarding prejudgment interest to Sunrich. Under Oregon law, prejudgment interest is available from the date a party's damages become "ascertainable" even if there remain factual disputes for the jury and even if there is no easily computable formula for such damages. *See Banister Continental Corp. v. Northwest Pipeline Corp.,* 76 Or.App. 282, 709 P.2d 1103, 1110–11 (1985) (en banc), *vacated on other grounds,* 301 Or. 763, 724 P.2d 822 (1986); *see also Strader v. Grange Mutual Ins. Co.,* 179 Or.App. 329, 39 P.3d 903, 908–09 (2002) (following Banister and characterizing it as abandoning line of cases that rejected prejudgment interest in the absence of an easily ascertainable computation). The amount of prejudgment interest, however, will need to be adjusted on remand in accordance with our decision today regarding the half-gallon trade secret and breach of contract claim.

### Appeal No. 05–36171:

### I. Reduction of Claimed Attorneys' Fees

Under Oregon law, "when a party prevails in an action that encompasses both a claim for which attorney fees are authorized and a claim for which they are not, the court must apportion the fees incurred for each claim." *Bennett v. Baugh,* 164 Or.App. 243, 990 P.2d 917, 921 (1999). However, if a petitioning party demon-

---

**3.** The mere submission of alternative instructions prior to trial is ordinarily not sufficient to preserve an objection to the court's instructions. *See Grosvenor Prop. Ltd. v. Southmark Corp.,* 896 F.2d 1149, 1152 (9th Cir.1990). However, if counsel introduces an instruction and presents arguments to the district court

concerning the merits of that instruction, so that the disputed issue is clearly brought to the attention of the district court, we will occasionally find compliance with Rule 51. *See Brown v. AVEMCO Inv. Corp.,* 603 F.2d 1367, 1373 (9th Cir.1979).

strates that it would have incurred fees regardless of whether the non-fee claims were included in the case, then the court need not apportion the fees. *Smith v. Ware*, 307 Or. 478, 769 P.2d 773, 775 (1989). In addition, apportionment between claims is not required if the fee and non-fee claims involve common legal or factual issues, the theory being that "the party entitled to fees would have incurred roughly the same amount of fees irrespective of the additional claim or claims." *Bennett*, 990 P.2d at 921; see also *C.A.M. Concepts, Inc. v. Gwyn*, 206 Or.App. 122, 136 P.3d 60, 63 (2006) (reversing a trial court's decision to apportion fees, noting that the non-fee claim involved the same factual and legal issues as the fee claims, and that there was thus no basis for reducing the award for time spent on the non-fee claim).

■ In the district court's first order, the court indicated that Sunrich was entitled to attorneys' fees only on its OTSA claim. In its amended request, Sunrich provided an entry-by-entry explanation of how much time it believed was related to the trade secrets claim, as well as a short explanation of why it believed the time fell into a permissible category—i.e., directly related to trade secrets, "generic" litigation time that would have been spent regardless of whether the non-fee claim was included, or work on claims involving common legal or factual issues. However, in the second order, the court complained that the "amended fee request does not appear limited to the trade secrets claim," agreed with Pacific's assertion that "this action was a breach of contract case primarily" and concluded that its fee award had to "represent a fair allocation of the time spent litigating the trade secrets claim." The district court apparently believed it could only award fees pertaining *exclusively* to the OTSA claim, which is incorrect under Oregon law.

We therefore must remand for a new determination of attorneys' fees applying the correct legal standard. This is not to say that, on remand, the district court is required to accept Sunrich's characterization of any individual entry as being related to or overlapping with the trade secret claim. The district court may, of course, evaluate the entries and find that some of them do not fit within the claimed apportionment exceptions.

We also recognize that the court identified a number of other bases for its reduced award, including Pacific's objections to generalized time entries, multiple attorney conferences, clerical or paralegal work performed by attorneys and duplication of effort. However, we cannot ascertain how much of the reduction was related to these objections, as opposed to Sunrich's "failure" to limit its request to the trade secret claims. Moreover, the order does not explain the reasoning behind its decision to sustain many of Pacific's objections, nor does it appear to calibrate these deductions to the actual fees requested. *See, e.g., Webb v. Ada County*, 285 F.3d 829, 839 (9th Cir.2002) (remanding for further explanation where basis for reduction was not clearly articulated); *Ferland v. Conrad Credit Corp.*, 244 F.3d 1145, 1149 (9th Cir.2001) (remanding where district court simply announced a bottom-line number of compensable hours, without attempt to calibrate the award to the objection it sustained for inefficiency); *Gates v. Deukmejian*, 987 F.2d 1392, 1399–1400 (9th Cir. 1992) ("hour-by-hour" analysis is not required, but cursory statement did not afford explanation as to how court arrived at ten percent across-the-board reduction and did not allow for meaningful review).

The court's findings may be completely correct, but it is difficult for us to ascertain how the final award correlates to the individual objections, and it is also difficult to

ascertain the court's reasoning underlying the individual objections. Because it is necessary to remand for recalculation of attorneys' fees to correct the legal error, we do not rule on the propriety of any of these additional rulings at this time, but the district court should clarify this portion of its ruling on remand.

## II. Reduction in Costs

We require a district court to specify reasons for a refusal to award costs, so that we can determine whether the reasons are appropriate and whether, considering those reasons, the district court abused its discretion by denying costs. *Champion Produce, Inc. v. Ruby Robinson Co., Inc.*, 342 F.3d 1016, 1022 (9th Cir.2003); *see also* Fed.R.Civ.P. 54(d) ("Costs other than attorneys' fees shall be allowed as a matter of course to the prevailing party unless the court otherwise directs."). In this case, the district court awarded only $5,000 in costs, although Sunrich requested more than $36,000.

■■■ The district court clearly sustained Pacific's renewed objection to costs associated with discovery depositions, which accounts for a little over $18,000 of the requested costs. The disallowance for expenses of depositions not used at trial is within the district court's discretion, *Washington State Dep't of Transportation v. Washington Natural Gas Co.*, 59 F.3d 793, 806 (9th Cir.1995), and we affirm this portion of the court's ruling.

■■■ Unfortunately, the district court's order does not clearly explain the reasons underlying its decision for additionally reducing the cost award. Although Pacific's brief offers a number of rationales to support the court's reduced award—including a lack of sufficient itemization, failure to justify the number of copies, excessive photocopying rates, and claims for improper items—none of these reasons were actually offered by the court. Because the

basis for the court's reduction (at least beyond the discovery depositions) is unclear, it is impossible to tell whether the legal error regarding apportionment discussed above carried over into the cost arena. We therefore remand the cost award for redetermination and for a more specific statement of reasons.

**Appeal No. 05–35152 is AFFIRMED IN PART, REVERSED IN PART, and REMANDED.**

**Appeal No. 05–36171 is AFFIRMED IN PART, REVERSED IN PART, and REMANDED.**

**Each party to bear its own costs on appeal.**