Argued and submitted January 31, 2013, reversed and remanded March 5, 2014

Richard C. HEAD,
*Plaintiff-Appellant,*

*v.*

George A. HEAD,
as Successor Trustee of the Cecilia F. Head Trust,
under agreement dated May 12, 1992,
and as successor trustee of the Robert C. Head Trust,
under agreement dated May 12, 1992, and personally;
and Peggy Head,
*Defendants-Respondents.*

Coos County Circuit Court
10CV0371; A149899

323 P3d 505

William A. McDaniel argued the cause for appellant. With him on the briefs was Whitty, McDaniel, Bodkin & Combs, LLP.

Erin Gould argued the cause for respondents. With her on the brief were Roger W. Gould and Gould Law Firm, PC.

Before Ortega, Presiding Judge, and Sercombe, Judge, and Hadlock, Judge.

ORTEGA, P. J.

## ORTEGA, P. J.

This case involves a dispute regarding the proper administration and disposition of the assets of plaintiff's mother's trust. Plaintiff brought an action for an accounting of his mother's trust, contending that the successor trustees failed to carry out the terms of the trust after her death. After a trial at which the parties disputed the effect of certain provisions in the trust instrument, the trial court modified the dispositive terms of the trust pursuant to ORS 130.205(1) and ORS 130.225. In its ruling, the court concluded that, as written, the trust instrument was consistent with plaintiff's proffered interpretation of the document. Nevertheless, the court modified the terms of the trust to meet, as determined by the court, the mother's probable intent. The court's modification of the trust's terms validated the prior actions of the successor trustees in administering and distributing the trust assets; thus, the court dismissed plaintiff's claims. On appeal, plaintiff asserts that the court erroneously modified the trust's dispositive terms. We conclude that the court acted without authority to modify the trust's terms under either cited statute, because neither party requested such relief or advanced the legal theory that the trust should be modified, and "[i]n neither law nor equity does a court's authority extend to the fashioning of remedies based on legal theories not advanced by the parties." *C. A. M. Concepts, Inc. v. Gwyn*, 206 Or App 122, 129, 136 P3d 60 (2006). Accordingly, we reverse and remand.

We begin with some general background and the relevant text of the trust instrument. In 1992, Cecilia and Robert Head established separate, but essentially identical, revocable living trusts. Cecilia and Robert had three children: plaintiff, George, and Roderick. The Cecilia F. Head Revocable Trust of 1992 (the Cecilia Head Trust) named Cecilia as trustee and life beneficiary, and funded the trust with a number of assets, including interests in real property, stocks, bonds, and cash. The trust instrument named Robert as successor trustee upon Cecilia's death or incapacity. Two sections of the trust instrument are central to plaintiff's claims and the parties' dispute at trial. First, Section 8 set forth the powers of the trustee. Second, Section

10 designated the distribution of the trust assets to be made upon Cecilia's death.

The latter section provides, as relevant:

"On my death, the following payment shall be made from the trust estate as then constituted:

"I.     [Directing trustee to pay taxes and assessments].

"II.    [Directing trustee to pay taxes related to settlor's death].

"III.   [Directing trustee to pay funeral and trust administration expenses].

"IV.    The balance of the trust estate remaining after the payments mentioned above in this section, as such balance may be augmented by any distribution from my probate estate, shall constitute the residuary trust estate. The residuary trust estate shall be held in trust for the following persons and purposes:

"A.     If my Husband survives me, the residuary trust estate shall be divided into two trusts, hereinafter referred to as Trust 'A' and Trust 'B' respectively.

"1.     Trust 'A' shall consist of the maximum pecuniary amount, if any, which can pass free of federal estate tax in my trust estate by reason of the federal unified credit and state death tax credit (provided that the use of the credit does not require an increase in the state death tax paid), but no other credits allowed for federal estate tax purposes. In determining that pecuniary amount, the trustee shall take into account all deductions (other than the marital deduction) allowable in my trust estate for federal estate tax purposes, and shall further take into account the net value of all other property included in my gross estate which passes or has passed to any other person, trust or entity in which it does not qualify for the federal estate tax marital and charitable deduction.

"My trustee shall determine which assets or interests in my residuary trust estate shall be distributed in satisfaction of this bequest, and the trustee may include therein all or any part of, or an undivided interest in, any particular asset or interest, other than those specifically disposed of [by] the provisions in this trust or otherwise, with assets so

used to be valued at their fair market value at the date or dates of allocation and distribution to Trust 'A'.

"2.   Trust 'B' shall consist of the remaining portion of my residuary trust estate. This trust shall be distributed to my Husband forthwith.

"B.   The trustee shall pay to or apply for the benefit of my Husband, during his lifetime, quarter-annually, or at more frequent intervals, the entire net income of Trust 'A'.

"C.   If the trustee deems such income payments to be insufficient, the trustee shall, from time to time, pay to or apply for the benefit of my Husband such sums out of the principal of Trust 'A' as the trustee, in the trustee's discretion, deems necessary to provide for his reasonable support, health, maintenance, and education.

"D.   On the death of my husband, or on my death if he does not survive me for a period of thirty (30) days, the Trustee shall distribute all of Trust 'A' and Trust 'B', and any residue of any trust estate to the following persons: To my children, hereinafter named, equally."

Section 10 of Robert's trust, the Robert C. Head Trust of 1992 (the Robert Head Trust), initially contained essentially identical text.

Cecilia died in 2004, and Robert became successor trustee of her trust. The parties do not dispute that, at the time Cecilia died, the federal unified credit amount was $1,500,000, and the value of the assets in Cecilia's trust was less than $1,500,000.

The specific details of Robert's acts as trustee of Cecilia's trust are not important to the issues on appeal, so we provide only those details that provide necessary context. Suffice it to say that Robert generally treated the trust assets as his own. Of particular note, he transferred trust assets from the Cecilia Head Trust into the Robert Head Trust in 2007. A few weeks later, acting as successor trustee, he purported to terminate the Cecilia Head Trust, stating that it no longer owned any interest in any real or personal property. Two months later, Robert changed the terms of the Robert Head Trust to eliminate any distribution of the trust's assets to plaintiff upon Robert's death. Robert died in

February 2010, and George was named successor trustee of both the Robert Head Trust and the Cecilia Head Trust.

Plaintiff initiated this action against George as successor trustee of the trusts, and also named George and his wife Peggy as defendants in their individual capacity. Plaintiff sought an accounting of the trusts, arguing that Robert, as trustee of the Cecilia Head Trust, had failed to comply with Section 10 of the trust instrument. Plaintiff alleged that, upon Cecilia's death, the unambiguous terms of the trust instrument required the trustee to transfer all assets in the Cecilia Head Trust into "Trust A" because Section 10 of the trust instrument dictated that Trust A was to "consist of the maximum pecuniary amount * * * which can pass free of federal estate tax in my trust estate by reason of the federal unified credit" and, at the time of her death, the trust estate consisted of assets that were less than the "maximum pecuniary amount" that could have passed free of the federal unified credit. Therefore, according to plaintiff, Trust A should have been funded with all of the assets of the Cecilia Head Trust and Robert, pursuant to Section 10(IV)(B) and (C), was only entitled to the income of Trust A and, if needed, discretionary supplemental disbursements from the principal of Trust A for his reasonable support, health, maintenance, and education. Under plaintiff's proffered interpretation of the trust instrument, he would have been entitled to a distribution of an equal share of the remaining assets of Trust A upon Robert's death.

In defendants' answer, they admitted that Robert had a duty to place all of the assets of the Cecilia Head Trust into Trust A upon Cecilia's death, but denied that the trust instrument required Robert, as trustee, to maintain Trust A for the named beneficiaries. Instead, defendants raised an affirmative defense of "reliance on trust instrument, ORS 130.825," contending that Robert had relied on the powers granted to him in Section 8 of the trust instrument which, according to him, granted him complete discretion to distribute assets out of the trust. Further, defendants raised a "genuine power of appointment" affirmative defense, contending that Robert's distribution of the trust assets was authorized under such power.

At trial, plaintiff presented a straightforward case, relying mostly on the terms of the trust instrument to advance his argument that, upon Cecilia's death, Trust A should have been funded with the entirety of the assets of the Cecilia Head Trust.

Defendants took the position at trial that the trust instrument created, by its explicit terms, a "discretionary trust," which authorized a trustee to "make, at any time, any distribution of assets out of trust to any beneficiary." Defendants maintained, therefore, that Robert's actions as trustee were within the scope of his powers. Defendants also argued that the trusts were drafted "so that, upon the first of the two of them to pass away, the survivor would have maximum use of all remaining assets for their personal use for the remainder of their lives." They asserted that, among other things, the trust was created for estate-tax-avoidance purposes, and if there was no need for the tax avoidance provisions, then the trust was a "discretionary trust" of which the trustee had complete discretion to use the trust's assets as he saw fit.

Members of the Head family testified at trial as to circumstances surrounding the creation of the trusts, the deterioration in the relationship between plaintiff and Robert, and how Robert used some of the assets of the Cecilia Head Trust. Defendants also called John Babin, the attorney who drafted the trust instruments for Cecilia and Robert in 1992, to testify about his role in drafting the trust instruments, and his understanding of Cecilia's and Robert's intent in creating the trusts. Over plaintiff's objection, Babin testified that, in 1992, the Heads had total assets of approximately $2 million and the "federal tax exemption" was $1 million per person. He testified that the Heads' concerns in creating the trusts were "[c]onveying the property to the descendents as they wished, number one; number two, avoiding or reducing federal estate taxes; and number three, retaining as much control over property that had to be put in some sort of trust to do that."

At the close of trial, the trial court indicated that the case was "really * * * about the language of the documents

themselves." Subsequently, the court issued a letter opinion which explained, in pertinent part:

> "The plaintiff's trial memorandum is extremely well written and well researched. The legal analysis and conclusion is unassailable. Under the law, it appears clear that the remedies he is requesting should be granted.

> "However, the bothersome question is how would that result be equitable?

> "It is not uncommon for lay people to ignore the structure and existence of trusts and to continue to treat the assets as their 'own' after they have conveyed to a trust. Both parties agree that [Robert] did act as if he was the owner of the property in [Cecilia's] trust to do with as he chose. His actions though were guided by legal advice throughout; two different attorneys assisted him and in essence treated the trust as if it were discretionary or precatory.

> "The attorneys, and [Robert], were interpreting the trust in accordance with [Cecilia's] intent in creating the trust. The purpose of Trust 'A' was not to provide for ultimate distribution to the sons. The trust language clearly demonstrated an intent that [Robert] should inherit all of [Cecilia's] assets except to the extent necessary to preserve her tax exemption. Trust 'B,' which was to consist of all assets 'not needed' for the tax exemption, was to be immediately distributed to [Robert]. [Cecilia's] will further provided that at the time of her death, if her trust should fail or if for any reason was inoperative or invalid, the residue of her estate was to go to [Robert].

> "There are two provisions of the Uniform Trust Code, as adopted by the Oregon legislature, which provide support for finding in favor of defendants in this case.

> "ORS 130.205(1) appears to allow 'equitable deviation.' A court can modify both administrative and dispositive trust terms, or terminate the trust, because of circumstances not anticipated by the trustor if the modification or termination will further the trustor's broader purposes and if in accord with the trustor's probable intention. In this case, trustor's intention was clear and the fact that there would ultimately be no tax liability to either estate was a circumstance not anticipated at the time the trusts were drafted.

"ORS 130.225 specifically allows a court to modify a trust to accomplish the trustor's tax objectives if the modification is not contrary to the trustor's probable intent.

"The attorney who prepared both the trusts and the wills for [Cecilia and Robert] testified at trial. He stated that they had estate tax concerns when they first consulted with him; their marital assets were in excess of $2 million at the time. He recommended to them that they divide all of their property equally and establish trusts so as to shelter the maximum possible from tax liability. The attorney testified that he drafted the living trust so that if there was no tax liability at the time of the first death, there was no need for Trust 'A.' He stated that was what the parties wished and that is what he believed he had accomplished with the trust instrument. The trust language the attorney prepared was to have given discretion to the trustee to transfer the maximum amount if necessary into Trust 'A.' He testified he accordingly so advised [Robert] after [Cecilia's] death.

"The second attorney *** assisted [Robert] in transferring properties from [Cecilia's] trust to his trust. This attorney's interpretation of Trust 'A' was that the principal could be used to benefit [Robert] in addition to it being a completely discretionary trust. They were '[Robert's] assets to do with as he wished.' The attorney also assisted [Robert] in the attempted termination of [Cecilia's] trust.

"[Cecilia's] Trust 'A' was a traditional, 'automatic bypass' trust to allow full use of her tax exemption and to avoid any balance remaining in the trust at the time of her death to be included in the surviving spouse's estate for tax purposes. In other words, the only purpose for Trust 'A' was to take advantage of the available tax exemption and to shelter assets. There was no need for Trust 'A' as the total estate of [Cecilia's] was considerably less than the maximum amount of the federal and state exemptions. Under [Cecilia's] will, if there was no trust, all of her property was to be distributed to [Robert]. Under the terms of [Cecilia's] living trust, all of her property was to be distributed to [Robert] except that which needed to be sheltered in Trust 'A' for tax purposes.

"It is reasonable and equitable, and in accord with ORS 130.205(1) and 130.225, for the court to modify the revocable trust by finding that Trust 'A' did not need to be created

or funded. Therefore, at [Cecilia's] death all of her assets were to be distributed outright to [Robert].

"Accordingly, plaintiff's claims are denied."

The court entered a general judgment against plaintiff.

On appeal, plaintiff assigns error to the trial court's modification of the terms of the Cecilia Head Trust pursuant to ORS 130.205(1) or ORS 130.225, and to the court's admission of extrinsic evidence as to Cecilia's intent when establishing the trust.[1]

We begin with plaintiff's challenge to the court's actions taken pursuant to ORS 130.205(1). That statute provides:

"The court may modify the administrative or dispositive terms of a trust or terminate the trust if modification or termination will further the purposes of the trust and the modification or termination is requested by reason of circumstances not anticipated by the settlor. To the extent practicable, the modification must be made in accordance with the settlor's probable intention."

Plaintiff contends that, under the plain text of the statute, a court can modify a trust only if the modification "is requested." He asserts that neither party requested modification of the Cecilia Head Trust. Plaintiff explains that defendants acknowledged that the trust assets should have been placed in Trust A, and argued instead that the trust was a discretionary trust that allowed Robert unfettered access to the trust assets. Plaintiff points both to defendants' answer and their argument at trial that the text of the trust instrument unambiguously created a discretionary trust that authorized Robert's actions. Plaintiff complains that he had no notice that a possible modification of the Cecilia Head Trust was at issue and, as a result, he had no opportunity to defend the issue. In sum, plaintiff maintains that the parties asked the court only to interpret the text of the trust instrument, but the court decided the case on grounds that the parties did not raise, and granted relief that was never requested.

---

[1] Given our disposition in this case, we do not reach plaintiff's assignment of error that the trial court impermissibly allowed extrinsic evidence to establish Cecilia's intent.

Defendants counter that although they did not request the specific relief granted by the court—*i.e.*, modification of the trust terms—they did request the ultimate relief granted by the court—"to allow the distributions from the Robert and Cecilia Head Trusts to stand" and "dismissal of plaintiff's claims and judgment in favor of defendant." Alternatively, defendants argue that ORS 130.205(1) authorizes the court to modify the terms of a trust when such relief is not requested. Defendants assert that plaintiff's reliance on "is requested" in ORS 130.205(1) is misplaced because the statutory text is ambiguous as to whether it requires that modification be requested before a court may grant relief on those grounds. Defendants maintain that "is requested" is written in passive voice and "is not attached to any subject or object in the sentence." Accordingly, defendants assert that the legislature's use of "is requested" does not clearly indicate that a party must request modification in order for a court to do so. At oral argument, defendants posited that "is requested" created a "passive presumption" that relief is requested by a party—but not necessarily that modification was requested as relief. Defendants point to the general purposes behind the legislature's adoption of the Uniform Trust Code—that it was intended to give courts more tools to modify the terms of trusts to preserve a settlor's intent. Defendant also notes that nothing in the comments to ORS 130.205 suggest that a party must request modification for the court to impose such relief.

Plaintiff also challenges the court's authority to modify the trust under ORS 130.225 when neither party has asked for that relief.[2] Although plaintiff acknowledges that the text of ORS 130.225 does not explicitly require that such relief be "requested," he argues that, because relief under ORS 130.225 was not requested, he never had notice that a modification based on that statute was at issue, "so he had no opportunity to present evidence or legal arguments regarding that issue." He also argues, as to the substance of the court's modification under ORS 130.225, that the trial

---

[2] ORS 130.225 provides:

"The court may modify the terms of a trust to achieve the settlor's tax objectives if the modification is not contrary to the settlor's probable intention. The court may provide that the modification has retroactive effect."

court did not modify Cecilia's trust "to achieve [Cecilia's] tax objectives" because her tax objective was to avoid paying as much estate tax as possible, and the trial court's modification of the trust either had no effect on that objective or could have negatively affected her tax objectives by placing some of her assets at risk of tax liability.

We agree with plaintiff that the court erred by modifying the terms of Cecilia's trust under ORS 130.205(1) or ORS 130.225. The court lacked authority to grant relief under either statute when such relief was not reasonably contemplated by the parties and represented a substantial departure from the pleadings and the legal theories upon which they relied. As a general rule, a court in equity has broad discretion in crafting relief, and the parties in equity are not necessarily limited to the relief that they seek in their complaint. *Port of Morrow v. Aylett*, 186 Or App 70, 76, 62 P3d 427 (2003). Yet, there are some limitations on the scope of relief that a court may order. *Id.* Chief among them is the principle that "[t]he broad power of a court of equity should not be invoked to shape a decree which was not reasonably contemplated by the parties and which * * * represents a substantial departure from the pleadings and the legal theories relied upon by the parties." *Shumate v. Robinson*, 52 Or App 199, 205, 627 P2d 1295 (1981). Put more succinctly, "[i]n neither law nor equity does a court's authority extend to the fashioning of remedies based on legal theories not advanced by the parties." *C. A. M. Concepts, Inc.*, 206 Or at 129.

The trial court violated that principle in this case. We readily conclude that the pleadings and legal theories advanced by the parties did not request modification of the trust's terms. Neither party has directed us to anywhere in the record where relief under ORS 130.205(1) or ORS 130.225 was requested or contemplated. Instead, the record reflects that the pleadings, as well as the arguments and evidence at trial, focused on the proper interpretation of the trust instrument, not on whether the terms of the trust instrument should be modified. Accordingly, the trial court erred in granting relief that was not reasonably contemplated by the parties and substantially departed from the pleadings and legal theories relied upon by the parties. *See*

*C. A. M. Concepts, Inc.*, 206 Or App at 129 (holding that the trial court erred by *sua sponte* awarding damages for unjust enrichment where the plaintiff did not plead a claim for unjust enrichment, the issue was not implicitly tried by the parties, and the plaintiff had not advanced any other legal theory that would support damages for unjust enrichment); *Shumate*, 52 Or App at 205 (concluding that the trial court erred when it determined that the plaintiff's claim of ownership of real property failed but *sua sponte* awarded the plaintiff an easement over the disputed property); *Hurlbutt v. Hurlbutt*, 36 Or App 721, 725, 585 P2d 724 (1978), *rev den*, 285 Or 73 (1979) (error to impose a constructive trust where the plaintiff sought only a resulting trust). We reverse and remand on that basis.

Reversed and remanded.