Argued and submitted December 16, 2005, reversed and remanded March 15, 2006

Laurie CLIFFORD,
personal representative of the
Estate of Travis Lee Clifford,
*Appellant,*

*v.*

CITY OF CLATSKANIE,
an Oregon municipal corporation,
*Respondent.*

012002; A124955

131 P3d 783

Linda K. Williams argued the cause for appellant. With her on the briefs were Mark McDougal and Gregory Kafoury.

Janet M. Schroer argued the cause for respondent. With her on the brief was Hoffman, Hart & Wagner, LLP.

Before Wollheim, Presiding Judge, and Haselton, Judge, and Harris, Judge pro tempore.

HASELTON, J.

## HASELTON, J.

Plaintiff, the personal representative of the estate of her deceased son, Travis Clifford (Travis), appeals, assigning error to the allowance of summary judgment in favor of defendant City of Clatskanie on plaintiff's claim for "Wrongful Death Outrageous Conduct." That claim was based on alleged misconduct by three of defendant's police officers, Kuehl, Turks, and Short. As explained below, we conclude that (1) plaintiff's claim is properly, and exclusively, characterized as a claim for intentional infliction of emotional distress (IIED); (2) there are disputed issues of material fact regarding whether Short, with intent to cause Travis emotional distress, made statements to third parties and whether those statements did, in fact, cause Travis to suffer emotional distress; and (3) there are also disputed issues of material fact as to whether Short's alleged statements were subject to "absolute privilege" or "discretionary immunity." Accordingly, we reverse and remand.[1]

■      Summary judgment is proper "if the pleadings, depositions, affidavits, declarations and admissions on file show that there is no genuine issue as to any material fact * * *." ORCP 47 C. "No genuine issue as to a material fact exists if, based upon the record before the court viewed in a manner most favorable to the adverse party, no objectively reasonable juror could return a verdict for the adverse party on the matter that is the subject of the motion for summary judgment." *Id.* In reviewing the allowance of summary judgment here, we draw all reasonable inferences in favor of plaintiff, who was the nonmoving party. *West v. Allied Signal, Inc.*, 200 Or App 182, 187, 113 P3d 983 (2005).

■      The gravamen of plaintiff's claim is as follows: In February 1998, Travis was a senior at Clatskanie High School. On the evening of Friday, February 6, and into the early morning hours of Saturday, February 7, there was a

---

[1] Given our determinations with respect to liability based on Short's alleged conduct, which require that the allowance of summary judgment be reversed and remanded, we need not, and do not, address the parties' contentions regarding the sufficiency of plaintiff's proof of alleged statements by Kuehl and Turks or the potential application of absolute privilege or discretionary immunity to their alleged conduct.

teenage drinking party at the home of Travis's former girl-friend. In response to two anonymous 9-1-1 calls, Clatskanie police officers Turks and Short went to the house and cited various high school students for being minors in possession of alcohol. Over the following three days, Turks, Short, and Clatskanie Chief of Police Kuehl allegedly told third persons, including high school students, that Travis had made at least one of the 9-1-1 calls. The alleged identifications of Travis as the 9-1-1 caller were false or, at least, made with reckless disregard of the truth, and were made with the intention of causing Travis emotional distress. As a result of those alleged disclosures by one or more of the city's agents, other high school students ostracized and harassed Travis, causing him extreme emotional distress, and that extreme emotional distress ultimately resulted in Travis committing suicide on Tuesday, February 10.[2]

Defendant moved for summary judgment on several grounds, including the following: (1) Plaintiff's pleadings did not state a cognizable claim for wrongful death. (2) Plaintiff had failed to adduce evidence that Kuehl, Turks, or Short had told Travis's fellow students that he was the 9-1-1 caller or, alternatively, to the extent that any of those officers had told any nonstudent that Travis was the caller, that that person had conveyed that information to any student. (3) In a related sense, plaintiff had not adduced any evidence that any disclosure by defendant's agents had, in fact, caused Travis to suffer mental distress. (4) Plaintiff had failed to adduce evidence that any of the officers intended to cause Travis emotional distress. (5) In all events, any liability arising from the alleged disclosures would be precluded either by absolute executive privilege or by discretionary immunity.

---

[2] Plaintiff's original complaint did not allege conduct by Short. Plaintiff tendered an amended complaint adding allegations concerning Short, but the trial court did not formally rule on it. Defense counsel stated at the hearing on defendant's motion for summary judgment that she had no objection to the court considering the summary judgment motion in light of the amended complaint, and the court agreed to do so. Plaintiff asserts, and we agree, that when evidence adduced at summary judgment would justify amending the complaint to allege additional facts in support of the claim, we may treat the complaint as if it were amended. *Minisce v. Thompson,* 149 Or App 746, 751, 945 P2d 582 (1997); *Hussey v. Huntsinger,* 72 Or App 565, 569, 696 P2d 580 (1985). We thus deem plaintiff's complaint to have been amended to allege conduct by Short.

Plaintiff disputed each of those grounds for summary judgment. Specifically—and of particular pertinence to our disposition of this appeal—plaintiff attempted to counter defendant's arguments regarding the alleged lack of proof of statements to students by any of the officers. In that regard, plaintiff submitted excerpts of the deposition of Bernadette O'Brien. In her deposition, O'Brien testified that, on the evening of February 7, 1998—the evening after the drinking party—she had been in the squad room at the Clatskanie Police Station, waiting to participate in a police "ride-along" that was to begin at 5:00 p.m.[3] As O'Brien waited, she overheard Short talking with other officers about the drinking party and its aftermath. In response to questioning by plaintiff's attorney during O'Brien's deposition, she testified:

"Q. And what did you overhear?

"A. He was talking about how—he said, We talked to some kids today, and I wasn't paying any attention to who the other party of the 'we' was. We told them that, and then he gave the name of a boy that I didn't recognize the name at the time, but I have subsequently come to believe that it was probably Travis Clifford. We told these kids that Travis Clifford had made the 9-1-1 call and gotten them busted.

"I, of course, was confused about this because I had been in the room at the time that the 9-1-1 call had come in, and we were under the impression that it was a neighbor. I said, how did you find this out because we didn't know that?

"And he says, Well, we didn't.

"I said, Well, why are you telling them that?

"He says, It doesn't matter who did it. He is still going to get his ass kicked.

"Q. And all of these statements that you have just recalled were all made by Officer Short?

"A. That's correct. They weren't verbatim of course but pretty much what he said.

"Q. Any further conversation then or did that end the conversation about the 9-1-1 call?

---

[3] O'Brien was a trainee who had been on duty at the 9-1-1 call center when the calls had come in the previous evening.

"A. Well, I asked why he would do that, and he said because he couldn't stand the little whatever he said. I don't recall the expletive that he used."

Defendant, in reply, moved to strike several of plaintiff's other evidentiary submissions in opposition to summary judgment. However, defendant did not move to strike O'Brien's deposition testimony or otherwise object to its admissibility on any ground.

The trial court granted the motion for summary judgment:

"I find no genuine issue of material fact that could go to a jury about whether the—and by the way, who made the phone call doesn't seem to be very important to me.

"But that the city officers knew that this young man was suicidal or had any mental health problem, for that matter, other than he's just a kid in the community who was giving them trouble, that whatever was going to happen next would cause his death and that in fact that the city did anything that would—did contribute, other than the fact that this kid was very troubled.

"Lots of things troubled him and he was already in a state that—that he could have very well taken his life. I also think there are privilege issues here, immunity issues on behalf of the state, which I believe many of these officers were acting in the—in their capacity as police officers and are in fact—were in fact privileged and—or are in fact privileged, and so—let's see if there's anything else I want to say about it. I think I've covered it."

On appeal, the parties, for the most part, renew their arguments. Before addressing the substantive sufficiency of plaintiff's proof proffered in opposing defendant's motion for summary judgment, we must address two predicate matters the resolution of which circumscribes our review. First, what is the proper characterization of plaintiff's cause of action? Second, what is the significance, procedurally and substantively, of O'Brien's recounting of Short's statements?

In her complaint, plaintiff pleaded only a single claim for relief, which was denominated, amorphously and

ambiguously, as a hybrid: "Wrongful Death Outrageous Conduct." The substance of the complaint is a melange of (1) allegations of IIED, resulting in injury to Travis; and (2) disconnected references to "invasion of privacy," "gross negligence," "deprivation of civil rights," and "wrongful death," including an allegation that Travis's parents were entitled to recover damages for loss of consortium and society.

■     Under ORCP 16 B, such an amalgam of putative "claims" within a single claim is impermissible: "Each separate claim or defense shall be separately stated." To the extent that the claim, as pleaded, seeks to recover damages arising from Travis's death, such a recovery would not be permissible because it would, in effect, render the claim a "common-law action for wrongful death," which is not cognizable under Oregon law. *See, e.g., Storm v. McClung,* 334 Or 210, 222 n 4, 47 P3d 476 (2002) ("Since at least 1891, this court has adhered to the view that no right of action for wrongful death existed at common law."); *Richard v. Slate,* 239 Or 164, 167, 396 P2d 900 (1964) ("[A]t common law no remedy by way of a civil action for wrongful death existed.").

Conversely, whatever its other deficiencies and superfluities, plaintiff's complaint does allege a legally sufficient claim for IIED, so long as relief is limited to recovery of non-death-related damages. We note further, albeit parenthetically, that, in response to our questions during oral argument, plaintiff's appellate counsel characterized the claim as one for IIED. Accordingly, we treat plaintiff's claim, properly and exclusively, as a claim for IIED with recovery of damages limited to damages for the emotional distress that Travis experienced before his death.

We proceed, then, to the second predicate matter—defendant's challenges to the critical portions of O'Brien's deposition testimony. On appeal, defendant raises two overarching arguments: (1) O'Brien's deposition testimony identifying Travis as the 9-1-1 caller whom Short had named "was not based upon personal knowledge as required by OEC 602 and ORCP 47 D"[4] and, thus, was "irrelevant hearsay and

---

[4] OEC 602 provides, in part:

"Subject to the provisions of ORS 40.415, a witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."

is not admissible"; and (2) in all events, when viewed in its total context, O'Brien's recollection that Short had identified Travis as the 9-1-1 caller was so speculative that it could not create a material issue of fact concerning Short's alleged disclosure.

Before the trial court, defendant did not raise the first, admissibility argument. As noted, in the trial court, defendant did move to strike other evidentiary submissions by plaintiff, arguing that those submissions were replete with inadmissible hearsay and averments that were not based on personal knowledge. *See* 204 Or App at 571. However, and in stark contrast, defendant raised no such objection to the O'Brien deposition excerpts. Rather, defendant's argument with respect to O'Brien's testimony was that it was so indefinite and attenuated that it could not create a triable issue of material fact:

> "It's merely testimony of Bernadette O'Brien six years after the fact. Her general recollection is some comment she overheard at the police station while Officer Short was on duty. And she admits in her earlier—in her testimony, 'and what did you overhear?'
>
> " 'He was talking about how he said we talked to some kids today and I wasn't paying any attention to the other party—who he was.'
>
> "So it's clear from her testimony that she's not clear exactly what all was being said. She was overhearing bits and pieces of conversation and you can, of course, review that for yourself, Your Honor, but we submit that it is insufficient to rebut the sworn and admissible evidence that the court has in support of defendant's Motion for Summary Judgment."

Nor will we treat defendant's present contention that O'Brien's deposition testimony is inadmissible as an alternative basis for affirmance. If defendant had raised such an objection before the trial court, the record may well have

---

ORCP 47 D provides, in part, that, subject to the exceptions set out in ORCP 47 E,

"supporting and opposing affidavits and declarations shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant or declarant is competent to testify to the matters stated therein."

developed differently. *See Outdoor Media Dimensions Inc. v. State of Oregon*, 331 Or 634, 659-60, 20 P3d 180 (2001) (appellate court will address alternative basis for affirmance only if the record is materially "the same one that would have been developed had the prevailing party raised the alternative basis for affirmance below").

Defendant's alternative (and preserved) challenge to O'Brien's testimony—*viz.*, that, even if admissible, that testimony does not raise a triable issue of material fact—is also unavailing. In particular, defendant argues that, even if admissible, O'Brien's testimony reveals that her recollection of Short naming Travis as the 9-1-1 caller was based on *post hoc* surmise and speculation:

> "Because O'Brien's testimony reveals that she did not hear the name of the boy the officers were talking about, but only came to believe at some later time that they had been talking about Travis Clifford * * *, this testimony is not based upon personal knowledge, but, rather, after-the-fact speculation."

Defendant's argument proceeds from a false first premise, *viz.*, that O'Brien "did not hear the name of the boy the officers were talking about[.]" That is incorrect. O'Brien testified that Short "gave the name of a boy that I didn't recognize the name at the time." Taking that testimony at face value, much less viewing it most favorably to plaintiff as our standard of review requires, O'Brien did "*hear* the name of the boy"; she just did not *recognize* it at that time. Further, to the extent that defendant posits that O'Brien's subsequent understanding that that name "probably was Travis Clifford" was, necessarily, the product of after-the-fact conjecture, that inference contradicts our standard of review. Rather, drawing all reasonable inferences in plaintiff's favor, O'Brien could, reasonably, have later recalled the name that she originally had heard but not recognized. Thus, plaintiff presented evidence from which a trier of fact could find that, some time on Saturday, February 7, Short (and perhaps one or more other officers) told high school students who had been at the party that Travis "had made the 9-1-1 call and gotten them busted."

Further, viewing O'Brien's testimony, *see* 204 Or App at 570-71, consistently with our standard of review, a trier of fact could find that Short made those statements falsely, or with reckless disregard for their truth, and with the intent to inflict severe emotional distress on Travis:

"I [O'Brien] said, How did you find this out because we didn't know that?

"And he [Short] says, *Well, we didn't.*

"I said, Well, why are you telling them that?

"He says, *It doesn't matter who did it. He is still going to get his ass kicked.*

"\* \* \* \* \*

"\* \* \* Well, I asked why he would do that, and he said *because he couldn't stand the little whatever he said. I don't recall the expletive that he used.*"

(Emphasis added.) *See generally McGanty v. Staudenraus*, 321 Or 532, 550, 901 P2d 841 (1995) (intent element, in the context of a claim for IIED, is satisfied "where the actor desires to inflict severe emotional distress, and also where he knows that such distress is certain, or substantially certain, to result from his conduct"). In sum, we conclude that plaintiff, through O'Brien's deposition testimony, adduced *prima facie* evidence that on February 7, defendant's agent, Short, told other students that Travis had "gotten them busted" by making the 9-1-1 call and that Short made that disclosure with the intent of causing Travis severe emotional distress.

Defendant argues, nevertheless, that summary judgment was proper for an alternative reason, *viz.*, that plaintiff failed to present evidence raising a triable issue with respect to causation of injury. In particular, defendant contends:

"Even if O'Brien's testimony were deemed admissible, it would not create an issue of fact, since there is no evidence of what the kids heard, who heard it, that any kids 'abused' Travis based upon Officer Short's words, that the confrontation caused Travis severe emotional distress, or that the distress based upon Officer Short's words is what caused Travis to take his life."

We note, at the outset, that defendant did not dispute before the trial court that Travis was, in fact, harassed by other students when he returned to school on Monday and Tuesday, February 9 and 10. Nor did defendant dispute before the trial court that, on February 10, Travis told his parents, "I can't take it any more" and that, later that day, he committed suicide.[5] Rather, defendant's argument before the trial court and on appeal appears to be that (1) without knowing which students with whom Short allegedly spoke, it would be impermissibly speculative to find that the students who harassed Travis did so because of Short's alleged disclosures—and, indeed, there is other evidence of different sources of student rumors regarding Travis's alleged involvement in the 9-1-1 call; and (2) given other evidence of Travis's emotional state from matters completely unrelated to the 9-1-1 rumors and harassment, it would be impermissibly speculative to find that Short's alleged disclosures caused Travis to suffer actionable emotional distress.

■ We disagree with defendant that a trier of fact could not find the requisite causation of injury without engaging in impermissible speculation. If Short did, in fact, tell students that Travis was the reason for them being "busted," a jury could reasonably infer that Short's calculated disclosures had precisely the effect that he had predicted: "It doesn't matter who did it. He is still gonna get his ass kicked." To be sure, a trier of fact might agree with defendant that there were other sources of rumors about Travis's involvement and that he would have been harassed in all events—but that is a quintessential jury question.

The same is true of defendant's argument regarding the nexus between peer harassment and Travis's emotional distress. A trier of fact could reasonably find that the peer reaction incited by Short's alleged statements caused Travis,

---

[5] Before the trial court, defense counsel represented to the court:

"The next day, Travis Clifford apparently went to school and some of the kids were apparently harassing him. He came home. He said I can't take it any more or words to that effect, so his parents say. They were concerned about him, they took him with them to lunch and took him home and left him there for a while and he later took his own life, tragically."

an emotionally vulnerable young man, severe emotional distress before he took his own life. Again, it may be, as defendant contends, that, given other dynamics in Travis's life, any peer harassment would have been, in a relative sense, immaterial to Travis's emotional state—but that determination is hardly susceptible to summary judgment.

■     Defendant argues, finally, that summary judgment was proper because any liability for IIED based on Short's alleged disclosures is precluded by absolute executive privilege, by discretionary immunity, or by both. Again, we disagree. Whatever the ultimate applicability of absolute privilege or discretionary immunity to Short's alleged statements, disputed issues of material fact regarding the availability of those defenses preclude summary judgment.

Defendant contends that all statements made by police officers in the course of their official duties are subject to absolute executive privilege. As support for that proposition, defendant invokes *Shearer v. Lambert*, 274 Or 449, 547 P2d 98 (1976), *Sandrock v. City of Corvallis*, 58 Or App 312, 648 P2d 382, *rev den*, 293 Or 634 (1982), and *Chamberlain v. City of Portland*, 184 Or App 487, 56 P3d 497 (2002), all of which involve the application of absolute executive privilege to claims for defamation based on statements by public officers. *Cf. Franson v. Radich*, 84 Or App 715, 735 P2d 632 (1987) (applying the attorney/judicial proceeding "absolute privilege" to a claim for IIED).

*Shearer* is the baseline precedent. There, the plaintiff, an assistant professor of physical education at Oregon State University, alleged that the defendant, head of the department of physical education, had defamed him in a letter that the defendant wrote to another faculty member concerning the plaintiff. 274 Or at 451-52. The trial court sustained the defendant's demurrer "apparently * * * on the ground that the statement, having been made by defendant as a public officer, was absolutely privileged and therefore the complaint failed to state a cause of action." *Id.* at 452. The Supreme Court reversed and remanded, concluding that there were disputed issues of fact as to whether the absolute

executive privilege applied to the alleged defamatory statements. The court first recognized the existence of the absolute executive privilege under Oregon law:

> "Underlying the rule of absolute privilege is the assumption that to permit suits against public officers would inhibit courageous and independent official action, and the further assumption that the public interest thus served outweighs the interest of persons damaged by the willful and malicious conduct of public officers."

*Id.* Nevertheless, the court concluded that the demurrer should not have been sustained because there were disputed issues of fact regarding whether the defendant had, in fact, made the alleged defamatory statements in the course of his official duties:

> "The privilege is available to a defendant only if he publishes the defamatory matter in the performance of his official duties. If this case were to go to trial, it is possible that the evidence would show that defendant was neither required nor authorized to make statements evaluating members of the Department of Physical Education to members of the faculty other than defendant's superior. Were the evidence to show this, defendant would not be entitled to the protection afforded by the privilege."

*Id.* at 455 (footnote omitted).

In *Sandrock*, we reviewed, and affirmed, the trial court's allowance of a directed verdict for the defendants on the ground that the alleged defamatory statement was absolutely privileged. There, a captain in the city's police force, who was in charge of the detectives division, told detectives in a briefing meeting that "he had heard that [the] plaintiff had been stopped for shoplifting in a local store and that, because she was the wife of the Benton County District Attorney, she was not arrested[.]" 58 Or App at 314. The defendants conceded that that statement was false, but successfully moved for a directed verdict, arguing that the statement was absolutely privileged as having been made by the individual officer within the scope of his employment. *Id.* In affirming the allowance of the directed verdict, we described the holding in *Shearer* as follows:

"In *Shearer*, the Supreme Court held that, when a public officer makes defamatory statements to persons to whom he has no official duty or authority to impart such information, the statements are not privileged."

*Sandrock*, 58 Or App at 314. Applying that standard, we concluded that uncontroverted evidence established that the officer had, in fact, been acting pursuant to his "official duty or authority" in communicating the defamatory material to other officers.

"[The officer] * * * was officially interested in any shoplifting investigation. Furthermore, the divisions of the police department were shown to cooperate with each other in their law enforcement efforts, and any information about criminal activity in the city of Corvallis was relevant to the duties of those officers."

*Id.* at 315.

In *Chamberlain*, the plaintiff, a Portland police officer, alleged that the defendant, a Portland police sergeant, had made defamatory statements about her in a report regarding a conference that both had attended as part of their official duty assignments. 184 Or App at 489. In affirming the trial court's allowance of summary judgment for the defendant based on the absolute executive privilege, we rejected the plaintiff's argument that that privilege does not apply where the alleged defamation occurs in the performance of a "ministerial" function. *Id.* at 491-92. We also rejected the plaintiff's argument that there were disputed issues of material fact regarding whether the defendant had made the allegedly defamatory statements in the performance of his official duties. *Id.* at 493-94; *see also Johnson v. Brown*, 193 Or App 375, 385-86, 91 P3d 741, *adh'd to on recons*, 194 Or App 486, 95 P3d 235 (2004) (affirming allowance of summary judgment on grounds of absolute privilege where allegedly defamatory statements were made by public employee during the course of an interview that the employee was required, as a duty of her employment, to participate in and to "cooperate fully in providing * * * her thoughts, perceptions, and observations regarding [the] plaintiff").

■ The consistent thread in our absolute executive privilege precedents is that the privilege applies only if the allegedly defamatory statements were made during the performance of official duties. Thus, "when a public officer makes defamatory statements to persons to whom he has no official duty or authority to impart such information, the statements are not privileged." *Sandrock*, 58 Or App at 314. Because absolute privilege is an affirmative defense, *see, e.g., Chamberlain*, 184 Or App at 489, defendant, as the party who would have the ultimate burden of persuasion at trial, bore the burden of adducing *prima facie* evidence that Short's alleged disclosure to the high school students on Saturday, February 7, as described in O'Brien's deposition testimony, was made during the performance of his official duties.

Defendant presented no such proof. That is unsurprising because defendant's position throughout has been that the evidence is insufficient to demonstrate that Short even made such a disclosure. Specifically, defendant presented no evidence that an officer has an "official duty or authority to impart" the identity of a 9-1-1 caller to persons apprehended as a result of that call, *see Sandrock*, 58 Or App 314, much less that such a disclosure would be within the course of the officer's performance of official duties where that disclosure is knowingly false or made with reckless disregard for its truth. Accordingly, defendant is not entitled to summary judgment based on absolute privilege.

■ Defendant argues, alternatively, that "discretionary immunity" precludes any liability arising from Short's alleged statements. ORS 30.265(3)(c) immunizes public bodies and their employees from liability for "[a]ny claim based upon the performance of or the failure to exercise or perform a discretionary function or duty, whether or not the discretion is abused." We have described "discretionary immunity" as follows:

> "Discretionary immunity applies to actions that embody 'a choice among alternative public policies by persons to whom responsibility for such policies have been delegated.' *Miller v. Grants Pass Irrigation District*, 297 Or 312, 316, 686 P2d 324 (1984). This statement identifies three criteria that a government function or duty must meet in order to qualify for discretionary immunity. It must be the result of

a *choice*, that is, the exercise of judgment; that choice must involve public *policy*, as opposed to the routine day-to-day activities of public officials; and the public policy choice must be exercised by a body or person that has, either directly or by delegation, the *responsibility* or authority to make it."

*Ramirez v. Hawaii T & S Enterprises, Inc.*, 179 Or App 416, 419, 39 P3d 931, *rev den*, 335 Or 114 (2002) (emphasis in original).

We conclude, for similar reasons to those set forth above concerning absolute executive privilege, that defendant is not entitled to summary judgment on its "discretionary immunity" defense with respect to Short's alleged disclosure on February 7. That is so for any of several reasons. First, as noted, defendant has never acknowledged that Short did, in fact, make the alleged disclosure on February 7. Accordingly, defendant has never presented evidence that Short actually engaged in an exercise of judgment. *See Sande v. City of Portland*, 185 Or App 262, 270, 59 P3d 595 (2002) (reversing allowance of summary judgment for defendant city based on "discretionary immunity," where the defendant denied that the alleged actionable conduct had ever occurred: "The problem with the city's response * * * is that it supports at best a conclusion that [the officer] *could have made* a judgment call that would have been entitled to discretionary immunity, not that she *did* make that judgment call." (Emphasis in original.)). Second, defendant has not identified, much less presented any evidence substantiating, any public policy that Short's alleged disclosure could have advanced. Finally, defendant has presented no evidence demonstrating that Short had "the *responsibility* or authority to make" any public policy choice. *Ramirez*, 179 Or App at 419 (emphasis in original).

In sum, we conclude that the allowance of summary judgment was erroneous because there are disputed issues of material fact pertaining to defendant's liability for IIED based on Short's alleged disclosure on February 7, 1998.[6]

Reversed and remanded.

---

[6] We reject, without discussion, defendant's remaining arguments to the contrary. Given our disposition, we do not address plaintiff's assignment of error to the trial court's denial of plaintiff's motion for a continuance.