Argued and submitted May 27, 2010, judgment on claims for conversion, removal of trustee, and money had and received reversed and remanded; otherwise affirmed April 13, 2011

Kathleen M. BRIGGS,
in her capacity as
Co-Trustee of the Orville N. Lamvik Trust,
*Plaintiff-Appellant,*

*v.*

Thomas O. LAMVIK,
as an individual
and in his capacity as
Co-Trustee of the Orville N. Lamvik Trust,
*Defendant-Respondent.*

Multnomah County Circuit Court
080709806; A141436

255 P3d 518

Margaret H. Leek Leiberan argued the cause for appellant. With her on the briefs was Jensen & Leiberan.

Matthew Whitman argued the cause for respondent. With him on the brief were James R. Cartwright and Michelle J. Johansson.

Before Haselton, Presiding Judge, and Armstrong, Judge, and Duncan, Judge.

HASELTON, P. J.

**HASELTON, P. J.**

In this intrafamily dispute, plaintiff, Kathleen Briggs, and her brother, defendant Thomas Lamvik, are co-trustees of the Orville N. Lamvik Trust. Plaintiff appeals, assigning error to the allowance of summary judgment against her myriad claims pertaining to defendant's acquisition of a house and bank accounts, which had belonged to the parties' father, Orville Lamvik (Orville). As explained below, although we conclude that the trial court did not err in dismissing most of plaintiff's claims, we also conclude that there are issues of material fact as to Orville's intent when he added defendant as joint account holder on his bank accounts, *see* ORS 708A.470.[1] Accordingly, we reverse the trial court's allowance of summary judgment as to the claims for which that factual dispute is ultimately material—*viz.*, plaintiff's claims for conversion, money had and received, and removal of trustee—but otherwise affirm.

Summary judgment is proper if, given all of the evidence submitted by the parties, "there is no genuine issue as to any material fact and * * * the moving party is entitled to prevail as a matter of law." ORCP 47 C.

> "No genuine issue as to a material fact exists if, based upon the record before the court viewed in a manner most favorable to the adverse party, no objectively reasonable [trier of fact] could return a verdict for the adverse party on the matter that is the subject of the motion for summary judgment."

*Id.* In making that determination, we draw all reasonable inferences in favor of the nonmoving party, here plaintiff. *See Clifford v. City of Clatskanie*, 204 Or App 566, 568, 131 P3d 783, *rev den*, 341 Or 216 (2006).

---

[1] As relevant here, ORS 708A.470 provides, in part:

"(1) Sums remaining on deposit in a bank at the death of a party to a joint account are rebuttably presumed to belong to the surviving party or parties as against the estate of the decedent. * * *

"* * * * *

"(6) The rebuttable presumption under subsection (1) of this section may be overcome by evidence establishing that:

"(a) The deceased party intended a different result[.]"

We limit our recitation of the facts to those that are material to our analysis.[2] Sometime in early 2000, shortly after the death of his wife, Orville asked plaintiff (his daughter) about whether she thought it would be a "good idea to have somebody on his [bank] accounts in case of an emergency."[3] Plaintiff told Orville that she thought it was "a smart thing to do" and that she had put her children's names on her bank accounts for that reason.

On January 30, 2000, Orville spoke with defendant (his son) and told him that he intended to add defendant's name to his bank accounts and, the next day, brought defendant signatory cards to sign. Sometime later, Orville had defendant write a check from one of his accounts "to make sure [he] could get money out of the bank for him" and introduced defendant to the staff at his bank. Thereafter, although defendant would occasionally write checks on Orville's behalf, Orville did not involve defendant in his financial affairs. That changed somewhat beginning in the summer of 2007, when Orville asked defendant to review his account statements to "make sure everything is up to snuff." Orville then had defendant review the statements every two to three months "just [to] check things over." Orville never explained why he added defendant as a joint signatory; nor did he ever tell defendant (or anyone else) that he intended for defendant to become owner of the accounts upon his death. Defendant did not contribute to the accounts or use the money in the accounts to cover his own personal expenses during Orville's lifetime.[4]

---

[2] As set out below, *see* 242 Or App at 138, we summarily reject plaintiff's contention that there are disputed issues of material fact pertaining to whether defendant subjected Orville to undue influence with respect to the disposition of his residence and bank accounts. Accordingly, we do not recount the circumstances of the purported undue influence.

[3] Although the record is unclear as to the precise timing of plaintiff's conversation with Orville, it is apparent that the conversation occurred sometime between January 1, 2000 and February 24, 2000, when Orville executed the documents creating his will and trust, *see* 242 Or App at 136. That determination is based on plaintiff's statement that her conversation with Orville occurred after her mother died, which occurred sometime in 2000, and Orville's self-identification as an "unremarried widower" in his will and trust documents, executed February 24, 2000.

[4] At the time of Orville's death, the bank accounts were worth approximately $160,000.

On February 24, 2000, shortly after Orville added defendant as a signatory on his accounts, Orville created a revocable living trust, appointing plaintiff and defendant as successor co-trustees. According to the terms of the trust, after Orville's death, everything in the trust estate, except his tools, should be divided equally between defendant and plaintiff. The same day that the trust was created, Orville executed a "pour-over" will, which named plaintiff and defendant as co-executors and directed that all of his assets should go into the trust. He also executed a deed conveying his residence to the trust. The attorney who helped Orville prepare his will and trust advised him to transfer his accounts to the trust "as soon as the trust is signed * * * in order to carry out [his] desire to divide the estate between [defendant] and [plaintiff]." Orville, however, never transferred the accounts to the trust.

In 2006, Orville executed a statutory warranty deed, conveying his residence to "Tom Lamvik, [a]s an individual[,] and Orville N. Lamvik[,] Trustee of The Orville N. Lamvik Trust * * * with right of survivorship * * *."

On March 20, 2008, Orville died. After Orville's death, defendant claimed exclusive ownership over the real property and the joint accounts, and moved $95,000 of the funds from those accounts into his personal bank account.

In July 2008, plaintiff initiated this legal action against defendant, raising a variety of claims relating to defendant's assertion of ownership over the residence and the joint accounts, which collectively comprised almost all of Orville's assets. Specifically, plaintiff asserted claims for (1) rescission, (2) financial elder abuse, (3) conversion of trust assets, (4) removal of trustee, (5) money had and received, (6) intentional interference with prospective inheritance, and (7) constructive trust.[5]

---

[5] In her first amended complaint, plaintiff asserted the claims for financial elder abuse, conversion, constructive trust, removal of trustee, and rescission. Plaintiff first raised her claims for money had and received and intentional interference with prospective inheritance in her memorandum in opposition to defendant's motion for summary judgment. There, plaintiff moved for leave to amend her complaint, asserting that her "Amended Complaint already alleges facts sufficient to establish Money Had and Received and Intentional Interference with Prospective Inheritance" and that, for that reason (among others), defendant's

Each of plaintiff's claims rests on at least one of three allegations: (1) that defendant had obtained an interest in Orville's bank accounts by undue influence; (2) that defendant had obtained an interest in Orville's residence by undue influence; and (3) that Orville did not intend for defendant to become owner of his bank accounts upon his death when he added defendant as a signatory to those accounts, rebutting the presumption in ORS 708A.470(1). Most importantly for our purposes, all of plaintiff's claims—except for the rescission and financial elder abuse claims, which, as we understand them, were solely predicated on plaintiff's undue influence allegations[6]—hinged, at least in part, on the allegation that Orville did not intend defendant to succeed as owner of the joint accounts when he made defendant a signatory on those accounts.

Defendant moved for summary judgment, contending, *inter alia*, that plaintiff had failed to adduce evidence creating a disputed issue of material fact as to (a) whether defendant had used undue influence to obtain his interests in Orville's bank accounts and residence or (b) that Orville did not intend defendant to become owner of the bank accounts upon his death. With respect to the latter, defendant argued that, even accepting that Orville had placed defendant on his

motion for summary judgment should be denied. In his reply, defendant argued that the court should not allow the amendment and that plaintiff's "new claims are simply derivative of the existing claims and would be just as vulnerable to summary judgment."

During the hearing before the trial court on defendant's summary judgment motion, the parties did not debate or discuss the elements of those additional claims, much less how the evidence proffered related specifically to the elements of those claims. Nonetheless, the trial court allowed plaintiff's motion to amend to add those new claims. In its order allowing summary judgment against all claims, the trial court stated, "The Court finds that those proposed new claims are derivative of the claims Plaintiff had already pled, and grants Plaintiff's motion for leave to amend, treats such amended claims as having been filed, and grants Defendant's motions for summary judgment as against Plaintiff's new claims as well."

[6] Plaintiff contended that rescission of the deed giving defendant a joint interest in Orville's residence was appropriate because the deed was "procured by undue influence." Plaintiff's theories supporting her financial elder abuse claim are less straightforward and, indeed, seem to have mutated over the course of this litigation. However, at the time of the hearing on the summary judgment motion, the gravamen of plaintiff's theory seems to have been that defendant used undue influence to obtain the shared interests in the accounts and real property, which constituted the "wrongful taking" necessary to state a claim for financial elder abuse.

accounts "in case of an emergency" during his lifetime, plaintiff had adduced no evidence establishing that Orville did not intend defendant to become owner of the funds at the time of his death. Defendant also argued that he was entitled to summary judgment as a matter of law on the constructive trust claim because a constructive trust is a remedial device and "not a substantive claim for relief."

Plaintiff took issue with each of defendant's grounds for summary judgment. As germane here, plaintiff remonstrated that evidence in the summary judgment record presented a triable issue as to Orville's intent with respect to the disposition of the accounts upon his death. In particular, plaintiff pointed to evidence that (1) Orville made defendant a signatory on the accounts for emergency purposes; (2) Orville never communicated to defendant that he wanted defendant to have the funds in the accounts; (3) defendant did not withdraw or contribute to the accounts during Orville's lifetime; and (4) Orville executed a will and trust by which his assets were to be divided equally between plaintiff and defendant.

After hearing argument from the parties, the trial court granted defendant's summary judgment motion:

"[T]here is no evidence to rebut the presumption created by ORS 708A.470(1), nor is there any evidence to show that the deed has an effect other than what the deed shows, which is that Mr. Tom Lamvik, by survivorship, owns the property.

"I don't find any evidence on this record of any kind of fraudulent misconduct, nor do I find any evidence at all of undue influence. What Orville Lámvik's intent was is a complete mystery and * * * why he chose to do what he did with respect to the bank accounts and—and the house is something that may never be known or may not be known but at least can't be told on this record.

"So I don't find that plaintiff—any of plaintiff's theories can survive summary judgment[.]"[7]

---

[7] Plaintiff's counsel asked the trial court to speak specifically to the issue of whether plaintiff's conversation with Orville about his intent to add defendant as a joint signatory on his accounts "in case of an emergency" created a genuine issue of material fact as to the applicability of the presumption in ORS 708A.470, and the court expressly ruled that it did not.

The trial court subsequently entered an order granting each of defendant's alternative motions for summary judgment "in their entirety" and a judgment in favor of defendant dismissing all of plaintiff's claims with prejudice.

On appeal, plaintiff generally reiterates and refines her arguments in opposing summary judgment. At the outset, we agree with the trial court that plaintiff failed to adduce evidence presenting a genuine issue of material fact as to whether defendant exercised undue influence over Orville to obtain his joint interests in the accounts and the real property. A published discussion of the particular circumstances pertaining to that matter would be of no benefit to the bench, the bar, or the public. Accordingly, we affirm without further discussion summary judgment in defendant's favor on plaintiff's claims for rescission and financial elder abuse, both of which were ultimately predicated on the allegations that defendant's interests in Orville's accounts and real property were obtained by undue influence.

Conversely, however, we conclude that there are triable issues of fact as to whether Orville intended defendant to become an owner of the joint accounts upon his death when he added him as a signatory to those accounts.[8] As explained below, *see* 242 Or App at 141-44, that conclusion, in turn, compels reversal of the allowance of summary judgment against plaintiff's claims for conversion, removal of defendant as trustee, and money had and received. Finally, as amplified below, notwithstanding that there are disputed issues of material fact pertaining to Orville's intent with respect to the disposition of the bank accounts, defendant is nevertheless entitled, on alternative grounds, to affirmance of the dismissal of plaintiff's claims for intentional interference with prospective inheritance and "constructive trust." *See* 242 Or App at 144-46.

We return to ORS 708A.470. That statute provides, in part:

---

[8] The parties do not dispute that, during Orville's lifetime, the money in the accounts belonged solely to Orville. *See* ORS 708A.465(1) ("A joint account belongs, during the lifetime of all parties, to the parties in proportion to the net contributions by each to the sums on deposit, unless there is clear and convincing evidence of a different intent.").

"(1) Sums remaining on deposit in a bank at the death of a party to a joint account are rebuttably presumed to belong to the surviving party or parties as against the estate of the decedent. * * *

"* * * * *

"(6) The rebuttable presumption under subsection (1) of this section may be overcome by evidence establishing that:

"(a) The deceased party intended a different result[.]"

Thus, pursuant to ORS 708A.470, the bank accounts are presumed to belong to defendant unless there is evidence that Orville "intended a different result" when he made defendant a joint signatory to the accounts.

Our conclusion that a disputed issue of fact exists as to Orville's intent is grounded in several inferences that a trier of fact could reasonably derive from plaintiff's proffered evidence. First, viewing the evidence in the light most favorable to plaintiff, one could reasonably infer that plaintiff's conversation with Orville about whether it was a "good idea to have somebody on his [bank] accounts in case of an emergency," prompted Orville, consistently with plaintiff's advice, to add defendant as a joint account holder. Indeed, the latter occurred very shortly after the former. Second, one could reasonably infer, given the timing and totality of the attendant circumstances, that, at the time he added defendant as a joint signatory, Orville's *sole* intent was to provide for necessary access to, and use of, the accounts to address his needs "in case of an emergency" during his lifetime—that is, that Orville had *no* donative intent. Third, and again by reasonable inference, the lack of such a donative intent is consistent with the disposition scheme in Orville's estate plan, executed less than a month later, which divided Orville's assets equally between plaintiff and defendant.

■ Defendant argues, nevertheless, that Orville's failure to move the accounts into the trust, contrary to his lawyer's instructions, conclusively evinces an affirmative choice by Orville to have those accounts pass to defendant outside the trust. To be sure, a trier of fact might regard that circumstance as compelling evidence of Orville's intent—but it is

hardly legally or factually dispositive. Defendant also argues that evidence of Orville's estate plan (which divided Orville's assets evenly) is not "independently sufficient" to rebut the statutory presumption in ORS 708A.470(1). That argument also misses the mark—as noted, *see* 242 Or App at 140, Orville's estate plan is merely one of several circumstances, and related reasonable inferences, on which plaintiff relies in arguing that there are material issues of fact as to Orville's intent, rebutting the statutory presumption. Given those circumstances, a reasonable trier of fact could infer that Orville did not intend for defendant to become sole owner of the accounts upon his death.

At first blush, it might seem that our conclusion in that regard would compel reversal of the allowance of summary judgment as to all claims pertaining to defendant's ownership and disposition of the accounts. However, defendant maintains that, regardless of any issues of fact regarding Orville's intent, he is nonetheless entitled, for various alternative reasons, to summary judgment on plaintiff's remaining claims—*viz.*, conversion of trust assets, removal of trustee, money had and received, intentional interference with prospective inheritance, and constructive trust. We address each of those claims, and defendant's specific contentions in response thereto, in turn.

■ We begin with plaintiff's claims for conversion of trust assets and for removal of defendant as trustee, which is predicated in material part on the purported conversion. The Oregon Supreme Court has adopted the definition of conversion found in section 222A(1) of the *Restatement (Second) of Torts* (1965):

> "[C]onversion is an intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel."

*Hemstreet v. Spears*, 282 Or 439, 444, 579 P2d 229, *appeal dismissed*, 439 US 948 (1978) (adopting definition set forth in the *Restatement*) (internal quotation marks omitted)). A person may commit conversion even where that person mistakenly believes that he or she is legally entitled to the property,

*In re Martin*, 328 Or 177, 184, 970 P2d 638 (1998), or otherwise acted in good faith, *Hicks v. Lilly Enterprises*, 45 Or App 211, 217 n 1, 608 P2d 186 (1980).

Here, the parties do not dispute that defendant intentionally exercised "dominion or control" over the accounts when he claimed the accounts as his own and transferred $95,000 of those funds into a personal account. Defendant contends, however, that, even assuming that the disputed issues as to Orville's intent are resolved against him—that is, even assuming that he did not become the owner of the joint accounts pursuant to the survivorship designation as a matter of law—he is, nevertheless, entitled to summary judgment on the conversion claim. That is so, defendant posits, because plaintiff brought the conversion claim solely in her capacity as co-trustee, and nothing he (defendant) did effectuated the requisite "serious interference" with any extant interest of the *trust* in the accounts. The entirety of defendant's argument in that regard is a single, conclusory sentence that asserts baldly that "the Trust would not come to own those accounts unless and until they were passed through a formal probate"—and, thus, even "[i]f the account designation were somehow invalid, that would not mean that the Trust was the legal owner of those funds." Defendant provides no legal authority substantiating his proposition as to the proper operation of probate law in such circumstances, and we are not aware of any.[9] In all events, as a trustee, plaintiff has an obligation to take "reasonable steps to take control of and protect the trust property," ORS 130.690, to "compel a former trustee or other person to deliver trust property to the trustee," ORS 130.705, and, concomitantly, to enforce any claims of the trust, ORS 130.700, on behalf of the trust's beneficiaries.

In sum, defendant's alternative basis for affirming the summary judgment against the conversion claim is unavailing. Consequently, given the existence of triable issues of

---

[9] Nor, contrary to the apparent assumption of some appellate counsel, does the mere assertion of an unsubstantiated legal proposition obligate the court to unilaterally validate that proposition. Just as we are not required to "search the record to find" asserted error, ORAP 5.45(4)(c), we are not required to engage in a diogenean search for the truth of an unsupported legal proposition.

fact pertaining to Orville's intent that are material to the disposition of that claim, we reverse the dismissal of the conversion claim and remand that claim for trial.

■ In related fashion, a determination as to whether defendant did, in fact, improperly exercise "dominion or control" over the joint accounts is also material to plaintiff's claim for removal of defendant as trustee. Plaintiff alleged that defendant's assertion of ownership over, and removal of funds from, the joint accounts after Orville's death constituted a "serious breach of trust owed by Defendant as co-trustee." *See* ORS 130.625.[10] Accordingly, the resolution of the factual dispute regarding Orville's intent with respect to the accounts—which, in turn, will resolve whether defendant owns the accounts—is material to the determination of whether defendant should be removed as trustee. The trial court erred in granting defendant's motion for summary judgment against that claim.

■ We reach the same conclusion with respect to plaintiff's claim for money had and received. Recovery on a theory of money had and received is predicated on a promise implied by law and based on the equitable principle that one who has been unjustly enriched by another should be required to make restitution. *C. A. M. Concepts, Inc. v. Gwyn*, 206 Or App 122, 128, 136 P3d 60 (2006). The action may be maintained " 'whenever one has money in his hands belonging to another, which, in equity and good conscience, he ought to pay over to that other.' " *Id.* at 129 (quoting *Powell et al. v. Sheets et al.*, 196 Or 682, 700, 251 P2d 108 (1952)) (internal quotation marks omitted). Accordingly, the issue of whether the joint bank accounts are owned by defendant or are properly assets of Orville's estate is central to whether plaintiff can establish her claim for money had and received. *See Tupper v. Roan*, 349 Or 211, 229, 243 P3d 50 (2010) (reversing Court of Appeals' remand to trial court for entry of summary judgment against plaintiff's money had and received

---

[10] As material to this case, ORS 130.625 provides:

"(1) The settlor, a cotrustee or a beneficiary may request that a court remove a trustee, or a trustee may be removed by a court on its own motion.

"(2) A court may remove a trustee if the court finds:

"(a) The trustee has committed a serious breach of trust[.]"

claim based on contrary conclusion that the plaintiff had, as a matter of law, an equitable interest in the disputed property). Once again, given the disputed factual issues pertaining to Orville's intent with respect to the accounts, summary judgment against that claim was erroneous.

**7.** We turn, finally, to plaintiff's two remaining claims—for intentional interference with prospective inheritance and "constructive trust." In *Allen v. Hall*, 328 Or 276, 285, 974 P2d 199 (1999), the Oregon Supreme Court recognized the claim for intentional interference with an expected inheritance as an extension of the well-established tort for intentional interference with economic relations. The elements of that tort are as follows:

> "(1) the existence of a professional or business relationship (which could include, *e.g.*, a contract or a prospective economic advantage); (2) intentional interference with that relationship or advantage; (3) by a third party; (4) accomplished through improper means or for an improper purpose; (5) a causal effect between the interference and the harm to the relationship or prospective advantage; and (6) damages. *See McGanty v. Staudenraus*, 321 Or 532, 535, 901 P2d 841 (1995) (stating elements); *Uptown Heights Associates v. Seafirst Corp.*, 320 Or 638, 651, 891 P2d 639 (1995) (same)."

*Id.* at 281. Without specification or elaboration, plaintiff generically contends, as she did before the trial court, that "[t]he same evidence that was set forth * * * for plaintiff's other claims also supports the claim that defendant intentionally interfered with plaintiff's prospective inheritance through an improper means or an improper purpose and that defendant's interference caused plaintiff to lose the prospective inheritance."

Here, the factual dispute regarding Orville's intent is material to the first element, *viz.*, whether the trust was the beneficiary of a prospective economic advantage in the form of a prospective inheritance of the bank accounts under the will. However, defendant contends that summary judgment was nevertheless proper because, *inter alia*, plaintiff did not proffer evidence presenting disputed issues of material fact with respect to the fourth element, *viz.*, whether

defendant's purported interference was "accomplished through improper means or for an improper purpose." In particular, with respect to the fourth element, defendant observes that "the only 'improper means' Plaintiff asserts is undue influence," *see Church v. Woods*, 190 Or App 112, 118, 77 P3d 1150 (2003) (concluding that the use of undue influence constitutes an "improper means"), and that there is no evidence that defendant acted with an "improper purpose."

Plaintiff, in her reply brief, neither takes issue with defendant's characterization of her argument, nor suggests that her intentional interference with prospective inheritance claim rests on theories of "improper means" or "improper purpose" different from those identified by defendant. Indeed, plaintiff's reply brief does not address the "prospective inheritance" claim at all. Instead, plaintiff merely reprises her previous factual and legal arguments as to why questions of fact exist regarding Orville's intent and whether defendant exercised undue influence.

■ Consistently with how the parties have joined issue, we view plaintiff's claim for intentional interference with prospective inheritance as being fashioned in the same mold as her other claims. In particular, we understand that claim as being predicated on the allegation that defendant's actions were wrongful solely because defendant employed "improper means"—and, specifically, means of undue influence—to obtain an interest in the joint accounts. Accordingly, as previously noted, because we conclude that there is no issue of material fact as to whether defendant engaged in undue influence, including to obtain any interest in the joint accounts, *see* 242 Or App at 139, we affirm the allowance of summary judgment against plaintiff's prospective inheritance claim.

■ Plaintiff's final "claim" is for "constructive trust." As the Oregon Supreme Court recently reiterated, "the concept of constructive trust does not stand on its own as a substantive claim, but exists solely as an equitable *remedy*, available to divest an individual who has been unjustly enriched of property that he or she 'ought not, in equity and good conscience, hold and enjoy.'" *Tupper*, 349 Or at 219 (quoting *Martson v. Myers et ux*, 217 Or 498, 509, 342 P2d 1111 (1959))

(emphasis in *Tupper*). *See also Brown v. Brown*, 206 Or App 239, 251, 136 P3d 745, *rev den*, 341 Or 449 (2006) ("A constructive trust is merely a procedural device to which the courts resort in order to effect restitution of property in specie. It is not a part of the substantive law." (Internal quotation marks omitted.)). Thus, to warrant the imposition of a constructive trust, the requesting party must "separately establish the existence of a particular species of substantive right that has been violated under circumstances that justify the imposition of [that] exceptional equitable remedy." *Brown*, 206 Or App at 251.

In this case, plaintiff contends that her "Claim for Constructive Trust" is independently cognizable and actionable because, "[if] all of plaintiff's other claims are denied, failure to impose a constructive trust on Orville's Bank Accounts would result in unjust enrichment." However, as defendant notes, that attempt to cast a request for the imposition of a constructive trust as a free-standing claim, rather than a remedy derivative of a substantive claim, is irreconcilable with Oregon precedent. Accordingly, the trial court properly allowed summary judgment against plaintiff's "Claim for Constructive Trust." In so holding, we imply no view as to the propriety of the imposition of a constructive trust as a remedy derivative of the claims that we have remanded.

Judgment on claims for conversion, removal of trustee, and money had and received reversed and remanded; otherwise affirmed.