Argued and submitted April 18, affirmed June 15, 2011

FARMERS INSURANCE COMPANY
OF OREGON,
*Plaintiff-Respondent,*

*v.*

AMERICAN FAMILY MUTUAL
INSURANCE COMPANY,
*Defendant-Appellant.*

Clackamas County Circuit Court
CV08110060; A143576

259 P3d 991

Tim Heinson argued the cause for appellant. With him on the briefs were Lori K. DeDobbelaere and Lachenmeier Enloe Rall & Heinson.

Craig O. West argued the cause and filed the brief for respondent.

Before Brewer, Chief Judge, and Carson, Senior Judge.

BREWER, C. J.

**BREWER, C. J.**

On November 6, 2006, a tree fell on the Dodson home, causing extensive damage that ultimately required the payment of major repair costs. This litigation arises from the unusual circumstance that, at the time of the loss, the Dodsons had in effect two separate homeowners' insurance policies that, by their terms, covered the loss. The first, issued by defendant, was taken out in April 2006. The second, issued by plaintiff, went into effect on November 3, 2006, three days before the loss occurred. The twist is that, in January 2007, the Dodsons asked defendant to cancel its policy retroactively to November 3, 2006. Defendant purported to do that, and it refunded the premiums that the Dodsons had paid back to that date. Plaintiff ultimately paid the loss and brought this action against defendant for contribution. On cross-motions for summary judgment, the trial court granted plaintiff's motion and denied defendant's motion. Defendant appeals, and we affirm.

Summary judgment is proper if, given all the evidence submitted by the parties, "there is no genuine issue as to any material fact and * * * the moving party is entitled to prevail as a matter of law." ORCP 47 C.

> "No genuine issue as to a material fact exists if, based upon the record before the court viewed in a manner most favorable to the adverse party, no objectively reasonable [trier of fact] could return a verdict for the adverse party on the matter that is the subject of the motion for summary judgment."

*Id.* In making that determination, we draw all reasonable inferences in favor of the unsuccessful party, here defendant. *See Clifford v. City of Clatskanie*, 204 Or App 566, 568, 131 P3d 783, *rev den*, 341 Or 216 (2006). The material facts are not in dispute; to the contrary, the parties stipulated to them before the trial court. In condensed form, the stipulation established that the Dodsons owned property in Clackamas County upon which Wells Fargo Bank had a mortgage lien. On April 17, 2006, defendant issued a homeowners' fire insurance policy insuring the Dodsons' property. Paragraph 2 of the "General Conditions" of defendant's policy provided that "[the insureds] may cancel this policy at any time by returning it to us or advising us of the current or future date

when it should be canceled." On November 3, plaintiff issued a homeowners' fire insurance policy to the Dodsons covering the same property. Both policies named Wells Fargo Bank as a mortgagee loss payee. On November 6, a tree fell on the Dodson residence, causing damage to it.

On January 11, 2007, the Dodsons sent a letter to defendant requesting cancellation of defendant's policy effective November 3, 2006. On January 12, defendant cancelled its policy effective December 14, 2006. On February 1, 2007, the Dodsons sent another letter to defendant requesting a cancellation date of November 3, 2006, rather than the incorrect date of December 14. On February 6, 2007, defendant cancelled its policy effective November 3, 2006. After cancelling the policy, defendant returned to the Dodsons the unused portion of the policy premium. At no time did defendant send a policy cancellation notice to Wells Fargo. However, on January 12, defendant sent Wells Fargo a letter stating that, because Wells Fargo's loan had been satisfied, defendant had "removed all indications of [Wells Fargo's] interest in [the] policy."

Subject to a loss occurring during the policy period, both policies would provide coverage to the Dodsons and Wells Fargo for the type of loss suffered when the tree fell on the residence. Defendant denied and continues to deny all coverage for damages caused by the falling tree on November 6, 2006. In accordance with the terms of its policy, plaintiff paid $229,552 for damages caused by the falling tree.

Based on those facts, the trial court concluded that defendant was not entitled to retroactively cancel its policy to the prejudice of plaintiff's contribution rights, and the court granted plaintiff's motion for summary judgment and denied defendant's cross-motion. Defendant appeals from the ensuing judgment that awarded plaintiff judgment for defendant's proportionate share of the loss under the pro rata contribution rule set out in *Lamb-Weston et al v. Ore. Auto. Ins. Co.*, 219 Or 110, 119, 341 P2d 110, *reh'g den*, 219 Or 130 (1959).

In *Lamb-Weston*, one of the plaintiffs—Lamb-Weston, Inc.—had a tort claim made against it. Two insurance policies, each with liability limits of $10,000, covered

that claim. The other plaintiff, St. Paul Fire and Marine Insurance Company, had issued one of the policies, while the defendant had issued the other. Lamb-Weston settled the tort claim for $3,400, using money that St. Paul had provided in return for a loan receipt. Thereafter, Lamb-Weston and St. Paul sued the defendant, seeking to recover the amount that they had paid in the settlement. *Lamb-Weston*, 219 Or at 113-15.

The issue in *Lamb-Weston* was how to determine which insurer should pay when both covered the same loss. Each insurer had tried to anticipate the problem in its policy; each policy contained an "other insurance" clause whose purpose was to require another insurer to pay first. The trial court found in favor of St. Paul on the ground that the defendant was the primary insurer. On appeal, the defendant argued that, contrary to the trial court's conclusion, St. Paul's coverage was primary. For that reason, the defendant insisted, it was not liable until St. Paul paid its policy limits, which it had not done. After discussing a number of relevant cases, the Supreme Court rejected the approach of attempting to find one insurer to be primary and another secondary. It concluded that attempting to apply the "other insurance" provision of one policy while rejecting that of another was "like pursuing a will o' the wisp." *Id.* at 122. There simply was no legal basis for concluding that one policy should yield to the other. The only way to resolve the conundrum was to require each insurer to contribute to the insured's loss in proportion to its share of the total policy limits. Because the two insurers' policy limits were identical, the defendant was liable for one-half of the settlement, and St. Paul was liable for the other half. *Id.* at 129.

*Lamb-Weston* essentially was a dispute between insurance companies about which should pay the loss. St. Paul had paid the insured's full loss, and that loss was within both insurers' policy limits. The court began by noting that the issue was "of importance only as between the insuring companies" because "it must be conceded by each insurance company that if the other was not an insurer against this occurrence then it would be liable for the full amount." *Id.* at 117. The court then quoted with approval from a

California case that emphasized that neither insurer was the beneficiary of the other's contract and neither had any contract right against the other; rather, both insurers had contractual obligations with respect to the same risk and were concurrently liable for it. *Id.* at 124-25 (quoting *American Automobile Ins. Co. v. Seaboard Surety Co.*, 155 Cal App 2d 192, 318 P2d 84 (1957)). Thus, from the perspective of the insurers, the existence of other insurance was purely fortuitous. One insurer cannot expect there to be another applicable policy covering the same risk; rather, in issuing its policy, each insurer has to assume that it will be liable for any loss to the full extent of the policy limits. If there is other applicable insurance, each insurer will receive a potential windfall that reduces the exposure that it would otherwise face.

Defendant does not dispute on appeal that the *Lamb-Weston* rule would control the outcome of this case in the absence of the Dodsons' purported retroactive cancellation of defendant's policy to a date preceding the subject loss. Instead, defendant asserts that, when the Dodsons obtained homeowners' coverage from plaintiff before the loss occurred, plaintiff's policy "effectively substitute[d] in for the older policy it [was] replacing." According to defendant,

> "[i]t can be inferred from the facts before the court that the insureds did not intend for both [defendant's] policy and [plaintiff's] policy to be in effect at the same time, but instead intended for [plaintiff's] policy to substitute in for [defendant's] policy. [Plaintiff's] policy was obtained to replace [defendant's] policy. This can be inferred by the fact that after they knew of a loss to their home * * *, the Dodsons still attempted to cancel [defendant's] policy back to the date they had obtained coverage with [plaintiff]."

As defendant sees things, plaintiff was not prejudiced by defendant's policy being cancelled as of the date of the loss and, therefore, the Dodsons "should be allowed to cancel insurance whenever they want if no one is prejudiced by them doing so."

In support of its substitution theory, defendant relies on *Zimmerman v. Union Auto. Ins. Co.*, 133 Or 600, 291 P 495 (1930). In that case, the Supreme Court held that an insured's purchase of a new automobile liability insurance

policy did not automatically cancel a prior policy after an accident in which a beneficiary, that is, an injured person, had been established. The court held that

> "the policy gave a direct primary right against the insurance company to any one injured by the insolvent assured. Much well-reasoned modern authority can readily be found holding that such a right cannot be terminated without the acquiescence of the beneficiary of the promise."

*Id.* at 606 (citations omitted). In so concluding, the court distinguished an older federal case that applied Washington law, *Finley v. New Brunswick Fire Ins. Co.*, 193 F 195 (CCD Wash 1911). In *Finley*, the court held that the substitution of one fire insurance policy for another with the insured's consent was sufficient to release the first insurer from liability, even if the policy had not been formally cancelled at the time of loss. In *Zimmerman*, the court posited the following *dictum* about *Finley*:

> "If the facts just related were the only circumstances before us, [*Finley*] * * * would be applicable and recovery could not be had upon the policy executed by the defendant. But a very material distinction exists between that case and our present one. The policy now sued upon, in our opinion, is one which undertakes to afford protection against liability and makes as its beneficiaries, in the event of the Assured's insolvency, individuals negligently injured by the latter. In [*Finley*], the policy, being one of fire insurance, was a contract of indemnity only, we assume. We are aware of the fact that the defendant places upon its policy a construction different than the above, but in arriving at our conclusion we have borne in mind the rule that ambiguities in an instrument should be construed in favor of the promisee when the promisor was its sole author and had the opportunity to prevent mistakes in meaning by employing exactness of expression."

133 Or at 603-04 (citation omitted). Defendant reasons that, because Oregon has codified the policy that property should not be over insured,[1] the substitution theory is the vehicle by

---

[1] ORS 742.200(1) provides:

"No insurer, insurance producer or insured shall knowingly issue or procure any fire insurance policy upon property within this state for an amount which with any existing insurance exceeds the fair value of the risk insured or of the interest of the insured therein."

which that policy must be vindicated in this case. We disagree.

In the first place, the authorities on which defendant relies are not on point. *Zimmerman* was an automobile insurance case, which, as the court itself noted, was not governed by fire insurance law principles. Moreover, *Finley*, the even older federal trial court decision to which the court in *Zimmerman* referred in *dictum*, is materially distinguishable from this case on its facts. In *Finley*, the defendant fire insurer had instructed the insured's broker that the defendant insurer wanted to cancel its policy. 193 F at 196. Acting on that request, the broker procured new insurance for the plaintiff, the defendant's insured. *Id.* Before the defendant's policy was formally canceled, however, the insured premises were destroyed by fire. *Id.* The plaintiff ultimately accepted the new insurance coverage, but, not being satisfied with merely making a claim against the new insurer, the plaintiff sued the defendant for the loss as well. *Id.* at 196-97. Unsurprisingly, the court declined to endorse that procedure. Instead, the court treated the act of cancellation of the defendant's policy as having been effectively consummated by the broker's procurement of a replacement policy and the insured's subsequent ratification of that act by acceptance of the new insurance policy. *Id.* at 198-99. No comparable acts of conscious replacement of defendant's policy—whether through acts of a broker or the Dodsons themselves— occurred before the subject loss arose in this case.

Second, there is no risk in this case that the Dodsons could have obtained a windfall as a result of the subject loss by reason of duplicate insurance coverage. Whether or not the substitution theory applies to these circumstances, the *Lamb-Weston* doctrine would stand in the way of such a fortuity.

Third, there is an even more fundamental problem with defendant's theory of the case. Where duplicate insurance coverage otherwise would exist, the substitution theory does not apply by operation of law. Rather, it depends on the agreement of the parties. *Hartford v. Aetna/Mt. Hood Radio*, 270 Or 226, 233, 527 P2d 406 (1974). The undisputed evidence is that the Dodsons first asked defendant to cancel its

policy on January 11, 2007. In fact, the agreement between the Dodsons and defendant that embodied the Dodsons' right to cancel the policy at the time of the subject loss was contained in the policy itself. As discussed, paragraph 2 of the "General Conditions" of the policy provided that "[the insureds] may cancel this policy at any time by returning it to us or advising us of the current or future date when it should be canceled."

There is no evidence in the record that the Dodsons ever returned the policy to defendant. They otherwise were entitled to cancel the policy only by advising defendant of a "current or future" date of cancellation. In order to meet that requirement in a manner consistent with the application of the substitution theory, the Dodsons would have been required to advise defendant of the desired cancellation date before the subject loss occurred. That did not happen. Thus, even if the Dodsons and defendant intended to waive the policy provision governing cancellation of defendant's policy in 2007, both insurers' policies were in effect when the subject loss occurred. Accordingly, by the terms of defendant's own policy, the substitution theory is unavailing to defendant in this case, and the *Lamb-Weston* rule controls. It follows that the trial court did not err in granting summary judgment to plaintiff and in denying defendant's cross-motion for summary judgment.[2]

Affirmed.

---

[2] In view of the foregoing analysis, we need not address plaintiff's alternative argument that defendant's policy was never effectively cancelled because no notice of cancellation was given to the loss payee under the policy, Wells Fargo.